Willie BRADFORD, Plaintiff,

v.

RENT–A–CENTER EAST,
INC., Defendant.

Civil Action No. 3:03cv0697–T.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 3, 2004.

Order Denying Motion to Amend
Nov. 23, 2004.

Eric James Artrip, Watson Jimmerson, Rebekah Keith McKinney, Watson Jimmerson Givhan Martin & McKinney, Huntsville, AL, for Plaintiff.

Hugh C. Nickson, III, Miller, Hamilton, Snider & Odom, Montgomery, AL, Kirkland E. Reid, Miller Hamilton Snider &

Odom, Michael Morris Shipper, Miller Hamilton Snider & Odom, Mobile, AL, Richard Larry Collins, Collins & Associates, Cullman, AL, for Defendant.

## ORDER

MYRON H. THOMPSON, District Judge.

Plaintiff Willie Bradford brings this lawsuit claiming that his former employer, defendant Rent–A–Center East, Inc., terminated his employment because of his race, in violation of two federal statutes: the Civil Rights Act of 1866, 42 U.S.C.A. § 1981; and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e–17. Bradford also claims that Rent–A–Center failed to promote him because of his race and retaliated against him because of his complaints of racial discrimination, in violation of § 1981. Finally, Bradford asserts that Rent–A–Center wrongfully terminated him as a result of a work-related accident, in violation of the following state statute: 1975 Ala.Code § 25–5–11.1. The court's jurisdiction is proper under 28 U.S.C.A. § 1331 (federal question), 42 U.S.C.A. § 2000e–5(f) (Title VII), 28 U.S.C.A. § 1343 (civil rights), and 28 U.S.C.A. § 1367 (supplemental).

This case is now before the court on Rent–A–Center's motion for summary judgment. The motion will be granted in part and denied in part.

## I. SUMMARY–JUDGMENT STANDARD

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise prop-erly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

Where, as here, the non-moving party bears the burden of proof at trial, "the moving party, in order to prevail, must do one of two things: show that the non-moving party has no evidence to support ... [his] case, or present 'affirmative evidence demonstrating that the non-moving party will be unable to prove ... [his] case at trial.'" *Hammer v. Slater,* 20 F.3d 1137, 1141 (11th Cir.1994) (quoting *U.S. v. Four Parcels of Real Property,* 941 F.2d 1428, 1437–38 (11th Cir.1991) (en banc)). Once the party seeking summary judgment has informed the court of the basis for its motion, the burden shifts to the non-moving party to show that a genuine issue of material fact exists. *Id.* In making its determination, the court must view all evidence and any factual inferences in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II. FACTUAL BACKGROUND

Rent–A–Center is a company engaged nationwide in the rent-to-own business. In April of 2000, Rent–A–Center hired Bradford for the entry-level position of account manager in the company's Alexander City store. During Bradford's initial interview, the store's manager, Tim Jones, suggested to Bradford that he would either be in training to be a manager or be a manager within six months. The management hierarchy at Rent–A–Center stores, from least senior to most senior, is account manager, insider/out (I/O) manager, execu-

tive assistant (E/A) manager, store manager, and district manager.

Around May 2001, an I/O manager position became available in the Alexander City store. Although Jones told Bradford that he would be promoted to an I/O manager position, the district manager, Edward Rich, transferred Dan Dean (a white I/O manager from another Rent–A–Center store) to the available position in the Alexander City store. Bradford complained to Jones about the missed promotion.[1]

In September 2001, Bradford was promoted to I/O manager. At the time of the promotion, Jones told Bradford that either he or Dean would be promoted to E/A manager. Dean received the promotion, which became effective on November 17, 2001. When Bradford learned of Dean's promotion, he complained to Jones that the decision was racially motivated, and Jones responded that Rich had simply preferred Dean.

As a result of the Alexander City store's poor performance during the last quarter of 2001, Rich replaced Jones with Bill Flournoy as the store's manager. Rich instructed Flournoy to improve the performance at the store. Both Jones and Flournoy reported to Rich that Bradford had received non-emergency, personal phone calls at work, in violation of Rent–A–Center's policy, as stated in its employee handbook.[2] Flournoy verbally repri-

manded Bradford twice for this conduct. In addition, Flournoy reported to Rich that Bradford was sometimes absent for four to five hours, while making delivery-and-collection runs, without regularly checking back with the store. Flournoy learned that Bradford, on at least one occasion, had visited a female friend for several hours during his absence. Flournoy orally reprimanded Bradford for his conduct.

On December 24, 2001, Bradford pulled a tendon and chipped a bone in his left ankle while on the job. Bradford informed Flournoy of the incident, and Flournoy contacted Rent–A–Center's workers' compensation administrator and instructed Bradford to visit the company's approved workers' compensation physician. Although Bradford never received any worker's compensation for his accident, he lost two days of work, one of which was a full-paid vacation day. When he returned to work, he was assigned a less physically demanding set of responsibilities.

In January 2002, Bradford said, in the presence of Flournoy, Dean, and other Rent–A–Center employees, that the reason he was not promoted was because of his race. Around January 27, 2002, Rent–A–Center terminated Bradford's employment on the ground that he had received too many personal phone calls at work.[3]

---

1. There is no evidence in the record that Bradford alleged at the time of Dean's promotion to I/O manager that Dean was promoted because he is white.

2. According to Rent–A–Center's employee handbook, "Personal business is not allowed during work hours. Personal telephone calls should only be made or accepted in the case of any emergency and must not interfere with your work.... Coworkers are expected to devote 100% of their time and effort to the job while on duty. Any activity of a personal or non-business related nature is not allowed during work hours, and will be grounds for

termination in appropriate circumstances." Defendant's narrative of undisputed facts and legal memorandum in support of its motion for summary judgment (Def's Memo), ex. A, Bradford dep. at ex. 12 (Coworker Handbook).

3. Although, as already discussed, Rent–A–Center alleges that Bradford made personal visits to friends while he was supposed to have been working, the only reason listed for Bradford's termination on the Rent–A–Center discharge form was "too many personal phone calls coming in and going out." Plaintiff's brief in opposition to defendant's motion

Bradford was replaced with a white employee. Other mid-level managers whose employment was terminated around this time period included Morgan Israel (a white male),[4] Melvin Buchner (an African-American male),[5] and Dean.[6] None of these employees was terminated for making personal phone calls.

On May 24, 2002, the Equal Employment Opportunity Commission received an unverified letter from Bradford, alleging racial discrimination by Rent–A–Center. The commission subsequently sent a completed charge of discrimination to Bradford for his signature and verification. Bradford filed the verified charge on August 4, 2002. On April 3, 2003, the commission sent Bradford a "Notice of Right to Sue," and, on July 2, 2003, he filed this lawsuit.

### III. DISCUSSION

#### A. Title VII Claim

Bradford claims that Rent–A–Center terminated his employment because of his race, in violation of Title VII.

The shifting of burdens in a Title VII case is determined according to the *McDonnell Douglas* framework. *See, e.g., Herawi v. State of Alabama Dep't of Forensic Scis.,* 311 F.Supp.2d 1335, 1344 (M.D.Ala.2004) (Thompson, J.) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). According to this framework, a plaintiff has the initial burden of establishing a prima-facie case of unlawful discrimination by a preponderance of the evidence; this prima-facie case requires " 'evidence adequate to create an inference that an

employment decision was based on a[n] [illegal] discriminatory criterion.' " *Id.* (quoting *Int'l Bhd. of Teamsters v. U.S.,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977)). If the plaintiff successfully raises a presumption of illegal discrimination by establishing a prima-facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment action. Once the defendant satisfies this burden of production, the plaintiff must set forth evidence that would be sufficient to convince a reasonable fact finder that the reason given by the employer was pretextual. *Id.*

One way Bradford may establish a prima-facie case is to show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse-employment action; and (4) he was replaced by a person outside his protected class or was treated less favorably than a similarly situated individual outside of his protected class. *Maynard v. Bd. of Regents of Div. of Univs. of Florida Dep't of Educ.,* 342 F.3d 1281, 1289 (11th Cir. 2003); *see also McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. As an African–American, Bradford is a member of a protected class. *Alexander v. Chattahoochee Valley Cmty. Coll.,* 325 F.Supp.2d 1274, 1281 (M.D.Ala.2004) (Thompson, J.). Moreover, neither party disputes that Bradford possessed the necessary qualifications for the position of I/O manager that he had held prior to being fired; that the termination of his employment constituted an adverse-employment action; and that a white employee replaced him. Bradford has thus met his "light" burden

---

for summary judgment (Pl's Brief), ex. M, personnel transaction/change of status notice.

**4.** Israel's employment was terminated on January 9, 2002.

**5.** Buchner's employment was terminated on February 15, 2002.

**6.** Dean's employment was terminated on May 17, 2002.

of establishing a prima-facie case. *Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1432 (11th Cir.1998).

Because Bradford has established a prima-facie case, Rent–A–Center, as stated, must articulate some legitimate, nondiscriminatory reason for Bradford's termination. " 'This intermediate burden is exceedingly light.' ... The defendant has a burden of production, not persuasion, and does not have to persuade a court that it was actually motivated by the reason advanced." *Herawi,* 311 F.Supp.2d at 1344 (quoting *Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir.1997)).

■ Rent–A–Center asserts that it terminated Bradford's employment because he violated the company rule against receiving non-emergency, personal phone calls at work. The company handbook clearly lays out this prohibition, and Bradford admitted to having violated it. Whether Rent–A–Center was actually motivated by its proffered reason for discharging Bradford is not significant at this stage of the *McDonnell Douglas* analysis. *Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir.2000) (en banc). What matters is that Rent–A–Center's interest in assuring that its employees focus on their work while on the job is a rational one, and the company's prohibition on non-emergency, personal phone calls is a reasonable manifestation of this policy. Certainly, Rent–A–Center has a legitimate interest in ensuring that Bradford's personal phone calls do not disrupt business meetings or interfere with his daily responsibilities. *See, e.g., Koons v. Aventis Pharmaceuticals, Inc.,* 367 F.3d 768 (8th Cir.2004) (affirming district court's holding that the discharge of an employee for making excessive personal calls was a legitimate, nondiscriminatory reason); *Paluck v. Gooding Rubber Co.,* 221 F.3d 1003, 1011 (7th Cir.2000) (holding that termination of

individual's employment for making personal phone calls was a legitimate, nondiscriminatory reason for discharge).

Because Rent–A–Center has successfully set forth a legitimate, nondiscriminatory reason for terminating Bradford's employment, Bradford, in order to survive summary judgment, "must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman,* 229 F.3d at 1037. This evidence may include the previously produced evidence that had been used to establish his prima-facie case. *Id.* at 1024. It should be emphasized, however, that this court is "not in the business of adjudging whether employment decisions are prudent or fair. Instead, [this court's] sole concern is whether unlawful discriminatory animus motivate[d the] challenged employment decision." *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999).

■ In order to demonstrate that Rent–A–Center's stated reason for his discharge is pretextual, Bradford argues that many company employees receive and make personal phone calls at work and that no employee has ever been fired or received a written warning for such conduct. To support his argument, Bradford provides the deposition of Store Manager Jones, who states that he and many other employees dialed and accepted several personal phone calls each week. District Manager Rich estimated during his deposition that he and half of the employees whom he supervised received personal calls on a weekly basis. Likewise, Store Manager Flournoy stated that he received personal calls on a weekly basis. Such evidence raises the question of whether Rent–A–Center's prohibition on non-emergency, personal phone calls was more honored in the breach. Moreover, Bradford asserts that many of

the phone calls that Rent–A–Center claims to have been personal were, in fact, business-related.

Thus, even though Bradford admits to having made personal phone calls at work, he denies that such calls were made to the extent alleged by Rent–A–Center or more frequently than by other employees. While Bradford has not provided specific evidence that non-African-American employees made personal phone calls at the same rate as he, Bradford's evidence, which suggests the common-place and frequent nature of personal phone calls at Rent–A–Center, is sufficient for a reasonable fact finder to conclude that Rent–A–Center's stated reason for firing Bradford is pretextual. Consequently, Bradford's Title VII claim that he was terminated because of his race will survive Rent–A–Center's motion for summary judgment.

### B. § 1981 Claims

Bradford claims that Rent–A–Center terminated his employment and failed to promote him because of his race, in violation of § 1981. In addition, he claims that, in violation of § 1981, Rent–A–Center retaliated against him because of his complaints of alleged racial discrimination.

### (a) Discriminatory Discharge & Failure to Promote

■ The McDonnell Douglas framework used to analyze Bradford's Title VII claim is also applicable to his § 1981 claims. Sledge v. Goodyear Dunlop Tires North America, Ltd., 275 F.3d 1014, 1015 n. 1 (11th Cir.2001) ("The McDonnell Douglas standard for a prima facie case is applicable in employment discrimination suits brought under 42 U.S.C. § 1981.");

see also Walker v. Mortham, 158 F.3d 1177, 1191 (11th Cir.1998) ("the McDonnell Douglas framework for Title VII applies equally well in section 1981 cases"). Therefore the conclusion reached in the Title VII discussion—that Bradford's claim of discriminatory termination of employment should survive summary judgment—applies with equal force to his § 1981 termination claim.

Bradford raises additional claims under § 1981 for discriminatory failure to promote and retaliatory discharge. With respect to the November 2001 promotion, he has successfully established a prima-facie case. As noted in the above discussion of Bradford's Title VII claim, he is a member of a protected class. In addition, the parties do not dispute that he was qualified for the position of E/A manager, that his failure to be promoted constituted an adverse-employment action, Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir.2001) ("generally the denial of a promotion is an adverse employment action"), and that an individual outside of his protected class (namely, Dean) was promoted in his stead.

■ In order to rebut the presumption of illegal discrimination raised by Bradford's prima-facie case, Rent–A–Center asserts that it promoted Dean over Bradford because Dean had more experience as an I/O manager (the position just below that of E/A manager). At the time of Dean's promotion to E/A manager in November 2001, Dean had worked as an I/O manager for approximately 2½ years. In contrast, Bradford had only two months of experience as an I/O manager.[7] In addition,

---

7. Bradford argues that even though he was officially promoted to the position of I/O manager in September of 2001, he was unofficially performing the duties of I/O manager for months prior to his promotion. Nonetheless, even accepting Bradford's assertion that he

functioned as an I/O manager for seven months prior to the E/A position becoming available, he would still have had less experience as an I/O manager than Dean had at the time of Dean's promotion to E/A manager.

according to District Manager Rich, only Dean officially applied for the E/A position and passed the required company E/A-manager testing materials.[8] In contrast, the communications with Bradford regarding the E/A position appeared to be oral and informal.[9] By emphasizing Dean's greater professional qualifications and the more formal-application process for the disputed position, Rent–A–Center has met its burden of rebutting the presumption of illegal discrimination.

In his attempt to set forth evidence that would be sufficient to convince a reasonable fact finder that the reasons given by Rent–A–Center are pretextual, Bradford points to the testimony of District Manager Rich, who complained that Dean—the employee who received the E/A promotion in lieu of Bradford—had been negligent in his professional responsibilities. In particular, the district manager stated that "[o]n many occasions ... both managers [Jones and Flournoy] told me of [Dean's] lack of work habits as finishing files, calling his route, helping—or doing the duties there at the store, forgetting to do things that was told to him, just many, many store operation duties that he would not complete or not do."[10] Yet these comments referred to Dean's performance just prior to his termination on May 17, 2002.[11] Bradford submits no evidence that, prior

to Dean's promotion to E/A manager (which occurred seven months before his termination), Dean was negligent in the conduct of his professional responsibilities. On the contrary, the store manager at the time of Dean's promotion stated that Dean was a "very hard worker, very honest, straight-forward, he was good with customers."[12]

Bradford also asserts that Rent–A–Center's reasons for failing to promote him to E/A Manager are pretextual because, according to his calculations, it takes Rent–A–Center approximately five times longer to give a first promotion to black employees than to white employees; moreover, according to Bradford, black employees must work approximately four times longer than white employees before being promoted to the position of store manager.[13] Bradford's calculations are based upon a sample size of 71 Rent–A–Center employees (including 18 black employees) promoted during the time frame of July 10, 1999, to November 22, 2003, and are limited to those employees promoted under District Manager Rich. The bulk of the promotions concerns those from account manager to I/O manager or from I/O manager to E/A manager.

 The use of statistical evidence regarding an employer's policies is a valid

---

8. Def's Memo, ex. B, deposition of Edward Rich.

9. Pl's Brief, ex. A, affidavit of Willie Fred Bradford, § 4.

10. Id., ex. D, deposition of Edward Rich at 194: 19–23.

11. Bradford contends that these comments referred to Dean's performance prior to his promotion. Pl's Brief, pp. 25, 29. Yet these comments were made in response to the following question during deposition: "Tell me about the circumstances surrounding his [Dean's] leaving Rent–A–Center." Id., ex. D,

deposition of Edward Rich at 194: 19–20. Therefore, Rich's comments addressed only the issue of Dean's discharge, not his performance prior to the discharge. If Bradford contends that Rich's comments referred to Dean's performance prior to his promotion, then he should have provided such evidence in the record. Otherwise, it would be pure speculation on the part of the court to adopt such an interpretation.

12. Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment (Def's Reply), ex. H, depo. of Tim Jones at 60: 70–22.

13. Plaintiff's Brief at 8.

way of demonstrating that an articulated legitimate reason is, in fact, pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 805, 93 S.Ct. at 1825–26; *see also Brown v. American Honda Motor Co., Inc.*, 939 F.2d 946, 952 (11th Cir.1991) ("Statistical evidence is an appropriate method for demonstrating both a prima facie case of discrimination and pretext."). Even statistics regarding a defendant's general employment practices "might be helpful to a determination of whether the refusal to [promote] in a particular case conformed to a general pattern of discrimination." *Miles v. M.N.C. Corp.*, 750 F.2d 867, 873 (11th Cir.1985).

■ However, "[s]tatistics . . . , without an analytic foundation, are virtually meaningless." *Brown*, 939 F.2d at 952. Bradford has offered an unsworn chart without expert testimony to signify the data's import. This stands in stark contrast to those instances in which courts have found statistical evidence sufficient to demonstrate illegal discrimination. *See, e.g., Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 852 (11th Cir.1997) (plaintiffs' offer of expert testimony, which included a discussion of the standard deviation of the data's distribution, was sufficient to prove that the defendants' reason was pretextual for purposes of summary judgment); *c.f. Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 874 (11th Cir.1986) (standard deviations in range from 1.92 to 5.3 used to establish disparate-impact claim).

In addition, although Bradford asserts that he has "presented evidence of the promotion of employees similarly-situated to him temporally, geographically and situationally," [14] his chart lists employees who were promoted almost one year before Bradford was even hired. Others were E/A managers who were promoted to store managers, a promotion which Bradford, who never became an E/A manager, could not have not expected. Finally, Bradford's analysis of the promotion data is rudimentary. The range-of-time frames from hire date to first-promotion date varied widely for black employees, from slightly over one month to a little under ten years. Bradford took little to no effort to account for the possible distortion of an outlier on this small sample size of 18 black employees, and there is no indication that any calculations were made as to whether the discrepancies between black and white promotion periods were statistically significant.

■ Although Bradford may believe that he was more qualified than Dean for the E/A position, " 'a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason' as long as 'the reason is one that might motivate a reasonable employer.' " *Pennington*, 261 F.3d at 1267 (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir.1997)). Moreover, although statistics regarding Rent–A–Center's general employment practices may be helpful in assessing whether its alleged reason for failing to promote Bradford is a pretext, such data, "while helpful, may not control individualized . . . [employment] decisions, particularly in the presence of otherwise justifiable reasons for [the decisions]." *Miles*, 750 F.2d at 873. The statistics may provide a "background against which to assess" a plaintiff's individual claim, *id.* at 873; however Bradford has no viable individual proof that Rent–A–Center's reason for failing to promote him, in

14. Plaintiff's response to defendant's (corrected) reply to plaintiff's response to motion for summary judgment, at 6.

particular, is pretextual, and he proffers only analytically weak statistical evidence of Rent–A–Center's general promotion practices. Bradford's chart, standing alone, is insufficient to demonstrate that Rent–A–Center's stated reason for failing to promote him is anything other than legitimate.

### (b) *Retaliatory Discharge*

Bradford claims that, in violation of § 1981, Rent–A–Center terminated his employment in retaliation for his complaints of discriminatory promotion practices. Bradford complained to Jones in early December 2001 that he believed his missed promotion was because of his race and stated to Flournoy, Dean, and other Rent–A–Center employees, in January of 2002, that "I guess you have to be white to move up at Rent–A–Center."[15] Bradford was discharged in late January 2002.

■ In order to establish a prima-facie case of retaliation under § 1981, Bradford may show that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse-employment action; and (3) a causal connection exists between the two events. *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir.1997).[16] "[T]he causal link requirement ... must be construed broadly; 'a plaintiff merely has to prove that the protected activity and the negative employ-

ment action are not completely unrelated.' " *Olmsted*, 141 F.3d at 1460 (quoting *E.E.O.C. v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571–72 (11th Cir.1993)).

In response to the prima-facie case, Rent–A–Center must proffer a legitimate, non-discriminatory reason for the adverse-employment action. If Rent–A–Center succeeds, then Bradford must demonstrate that Rent–A–Center's reason is a pretext for retaliation. *Holifield*, 115 F.3d at 1566.

■ With respect to the first element of Bradford's prima-facie case, it has been held that a complaint of racial discrimination to superiors is a form of statutorily protected expression for purposes of § 1981. *See, e.g.*, *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir.2001) (statutorily protected expression includes internal complaints of harassment to superiors); *Holifield*, 115 F.3d at 1566 (plaintiff's voicing of concerns regarding racial discrimination to superiors constituted statutorily protected expression). Although the complaints of racial discrimination to superiors that have been found to constitute statutorily protected expression have often taken a more formal form than the conversational remark made by Bradford in the instant case, there is no indication that Bradford's more casual comment in the presence of Flournoy warrants any

**15.** Pl's Brief, ex. A, affidavit of Willie Fred Bradford, §§ 5–6.

**16.** Although *Little* involved a retaliation claim under Title VII, the United States Court of Appeals for the Eleventh Circuit has held that Title VII and § 1981 "have the same requirements of proof and use the same analytical framework." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998). The court proceeded to address a Title VII claim "with the understanding that the analysis applies to the § 1981 claim as well." *Id.* However, in *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1463 n. 4 (11th Cir.1998), the

appellate court stated that "the concerns underlying a retaliation action brought pursuant to Title VII and § 1981 might, in some circumstances, be different." The distinction between Title VII and § 1981 retaliation claims seems limited, however, to those instances where the retaliation alleged grows out of a claim not based on the race of the complainant. *Id.* Since Bradford's retaliation claim grows out of a race claim, the possible distinction between Title VII and § 1981 claims referred to in *Olmsted* need not be addressed here.

less protection. Bradford's comments are protected regardless of whether Bradford proves the underlying claim of discrimination which led to his complaint. *Id.* In addition, Bradford suffered an adverse-employment action, in that his employment was terminated. *Id.*

■■■ "[C]lose temporal proximity between the employee's protected conduct and the adverse-employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection," *Brungart v. BellSouth Telecomms., Inc.,* 231 F.3d 791, 799 (11th Cir. 2000); however, this temporal proximity is not determinative if the decision-maker who discharged the employee lacked knowledge that the employee had engaged in protected conduct. *Id.* Temporal proximity has been found in longer time spans than the months or weeks at issue here. *See, e.g., Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 590 (11th Cir.2000) (close temporal proximity found where plaintiff complained about harassment in late 1994 and January 1995 and then suffered adverse-employment actions in the spring of 1996 and early 1997). Moreover, because it was Flournoy who terminated Bradford's employment and because Flournoy had earlier heard Bradford's comment regarding possible racial discrimination, the "decision-maker" was aware that the employee had engaged in protected conduct. Consequently, since Bradford has established that he engaged in statutorily protected expression and suffered an adverse-employment action and that, arguably, a causal connection exists between the two events, he has successfully established his prima-facie case and the burden shifts to Rent–A–Center to provide a legitimate, non-discriminatory reason for the adverse-employment action.

This next stage of the analysis resembles that already engaged in above with respect to the § 1981 unlawful discharge claim, and the court's conclusion is the same: Bradford has successfully presented enough evidence for a jury to find that Rent–A–Center's stated reason for terminating his employment is a pretext. Consequently, Bradford's retaliation claim will survive summary judgment.

### C. § 25–5–11.1 Claim

As an alternative theory, Bradford asserts a pendant state-law claim under § 25–5–11.1, which provides that "[n]o employee shall be terminated by an employer solely because the employee has instituted or maintained any action against the employer to recover workers' compensation benefits under this chapter. . . ." 1975 Ala. Code § 25–5–11.1. Bradford claims that Rent–A–Center terminated his employment in order to avoid paying any workers' compensation benefits that might have been due him because of an ankle injury he had sustained on the job. Bradford informed Flournoy of his injury shortly after it had occurred, in late December. Four weeks later, Bradford was discharged.

■■■ In order to establish a prima-facie case of actionable retaliation under this Alabama statute, Bradford must show: "[(1)] an employment relationship, [(2)] an on-the-job injury, [(3)] knowledge on the part of the employer of the on-the-job injury, and [(4)] subsequent termination of employment based solely upon the employee's on-the-job injury and the filing of a workers' compensation claim." *Alabama Power Co. v. Aldridge,* 854 So.2d 554, 563 (Ala.2002). If Bradford successfully establishes this prima-facie case, then Rent–A–Center must come forward with evidence that he was terminated for a legitimate and non-pretextual reason. *Coastal Lumber Co. v. Johnson,* 669 So.2d 803, 809 (Ala.1995). In response, Bradford must establish that Rent–A–Center's stated rea-

son for terminating his employment is not true, but a pretext for an unlawful termination. *Id.*

The first three elements of Bradford's prima-facie case (an employment relationship, an on-the-job injury, and knowledge on the part of the employer of the on-the-job injury) are not disputed by the parties. However it is a point of contention whether he has demonstrated the fourth element: the termination of his employment based solely on his injury and filing of a workers' compensation claim.

Before addressing whether Bradford has satisfied the fourth element of his prima-facie case, it is necessary to understand the debate in the Alabama courts over the extent of § 25–5–11.1's coverage. In particular, there is some uncertainty as to whether § 25–5–11.1 applies to retaliation for only lawsuits filed (as opposed to retaliation for mere claims made) to recover workers' compensation benefits. On one hand, dictum in *Tyson Foods v. McCollum*, 881 So.2d 976, 982 (Ala.2003), limits § 25–5–11.1 to retaliation for lawsuits for workers' compensation benefits. There, the court wrote:

> " 'Action' in its legal sense 'means a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law.' *Black's Law Dictionary* 28 (6th ed.1990). In this case, it is undisputed that McCollum did not file or maintain any 'action' for workers' compensation benefits as the term 'action' is defined above. However, in *McClain v. Birmingham Coca–Cola Bottling Co.*, 578 So.2d 1299 (Ala.1991), we interpreted § 25–5–11.1 as covering even the filing of a claim for workers' compensation benefits. Tyson does not ask us to revisit that holding."

*Id.* This language would exclude retaliation for simply filing a workers' compensation claim. On the other hand, as the

*Tyson Foods* court recognized, the Alabama Supreme Court, in *McClain*, 578 So.2d 1299, clearly held that § 25–5–11.1 covered retaliation for workers' compensation claims. According to the *McClain* court, to hold otherwise "would have a chilling effect on the employee's exercise of a statutory right ... [and] would not only encourage some employers to terminate injured employees who file claims for worker's compensation benefits, but it would also effectively discourage employees from ever filing a claim in the first place." *Id.* at 1301. This latter interpretation seems more clearly to effectuate "the obvious legislative intent" of this law, namely "to protect an employee from a retaliatory discharge based solely on the employee's filing a workers' compensation claim." *Bleier v. Wellington Sears Co.*, 757 So.2d 1163, 1169 (Ala.2000).

Given that Alabama law seems to favor an interpretation of § 25–5–11.1 that covers retaliation for mere claims, this court now turns to Bradford's efforts to provide enough evidence to establish the fourth element of his prima-facie case. Bradford alleges that Rent–A–Center's sole reason for terminating his employment was not the aforementioned telephone calls at work; instead he asserts that the proximity between his injury and his discharge coupled with his evidence that no other Rent–A–Center employee has ever been discharged for making personal phone calls at work demonstrates that Rent–A–Center's reason for terminating his employment is pretextual.

■ Bradford ultimately succeeds in coming forward with enough evidence to establish the fourth element of his prima facie case—and Rent–A–Center ultimately fails in its effort for summary judgment on this retaliatory claim—for a reason similar to that discussed in the context of the Title VII unlawful termination and § 1981 retal-

iatory discharge claims: a genuine issue of material fact exists regarding whether Rent–A–Center's reason for Bradford's discharge is a pretext for an impermissible termination of employment.

■ However, unlike retaliation law under § 1981, Alabama case law is clear that proximity between the injury and discharge is not sufficient, by itself, to succeed on a claim under § 25–5–11.1. *See, e.g., Coca–Cola Bottling Co. Consolidated v. Hollander,* 885 So.2d 125, 130, 2003 WL 22463378, at *5 (Ala.2003) ("The ... language in § 25–5–11.1 makes it clear that a cause of action under that section cannot be based *merely* on facts that show that the plaintiff was terminated at some point after the plaintiff had sought or received workers' compensation benefits."); *Hayden v. Bruno's, Inc.,* 588 So.2d 874, 876 (Ala.1991) (refusing to assume that an employee's discharge was retaliatory simply because it followed a claim for workers' compensation benefits). Yet the short time frame of one month between Bradford's on-the-job injury and subsequent discharge together with the important genuine issue of material fact surrounding the lawfulness of Rent–A–Center's stated reason for terminating Bradford's employment points to a reasonably probable "direct and distinct causal link" between his workers' compensation claim and the termination. *Coca–Cola Bottling Co.,* 885 So.2d at 133, 2003 WL 22463378, at *5. *See, e.g., Culbreth v. Woodham Plumbing Co., Inc.,* 599 So.2d 1120, 1122 (Ala.1992) ("If the plaintiff's prima facie case is strong, and the defendant's evidence of an asserted reason is weak or equivocal, the jury might simply disbelieve the defendant."); *Bailey v. R.E. Garrison Trucking*

*Co.,* 834 So.2d 122, 125 (Ala.Civ.App.2002) (denying employer's motion for summary judgment on a retaliatory discharge claim where, "[g]iven the disputed testimony regarding the events surrounding the employee's dismissal, a jury could believe the employee's testimony over the employer's."). Consequently, Bradford's retaliatory discharge claim survives summary judgment.

## IV. CONCLUSION

For the reasons given above, it is ORDERED as follows:

(1) Defendant Rent–A–Center, Inc.'s motion for summary judgment (doc. no. 30) is granted with respect to plaintiff Willie Bradford's unlawful promotion claim under 42 U.S.C.A. § 1981.

(2) Said motion is denied in all other respects.

## ORDER

This lawsuit is again before the court, this time on defendant Rent–A–Center East, Inc.'s motion to alter or amend the summary-judgment order.

Rent–A–Center argues that, because Market Manager Ed Rich officially terminated plaintiff Willie Bradford's employment and because Rich never learned of Bradford's complaint regarding discrimination, summary judgment should have been granted on the retaliatory-discharge claim. Yet, when deciding to terminate Bradford's employment, Rich "received and relied upon store manager Bill Flournoy's report of Bradford's conduct." [17] Moreover, in his deposition testimony, Rich states that he simply "approved the termination of Bradford's employment." [18]

---

**17.** Defendant's motion to alter or amend the summary judgment order (Def's Motion) (doc. no. 70).

**18.** *Id.,* Ex. B, Rich aff. ¶ 9.

Flournoy was aware of Bradford's complaint regarding discrimination, and "when the harasser ... is not the decisionmaker, if the plaintiff shows that the harasser employed the decisionmaker as h[is] 'cat's paw'—i.e., the decisionmaker acted in accordance with the harasser's decision without h[im]self evaluating the employee's situation—causation is established."[19] *Llampallas v. Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir.1998) (internal citations omitted). In this case, a jury might find that Rich was a mere "titular 'decisionmaker,'" "a mere conduit," the "cat's paw," for Flournoy's allegedly discriminatory motives. *Id.*

Rent–A–Center also argues that the court should have dismissed Bradford's discriminatory discharge claims because he failed to provide evidence that Rent–A–Center's decision was motivated by racial animus or to identify nearly identical, nonminority comparators. Yet Bradford's evidence, including the testimony of several non-minority managers, indicated that his colleagues engaged in comparable conduct without being punished. "[E]vidence sufficient to discredit a defendant's proffered nondiscriminatory reasons for its actions, taken together with the plaintiff's prima facie case, is sufficient to support (but not require) a finding of discrimination." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1535 (11th Cir.1997).

For the reasons stated above, it is ORDERED that the defendant Rent–A–Center East, Inc.'s motion to alter or amend the summary-judgment order (doc. no. 70) is denied.

---

**19.** The term "cat's paw" alludes to a very old tale about a monkey that persuades a cat to pull chestnuts out of the fire so as to avoid burning its own paws. The story dates from the 16th century and versions of it (some with a dog) exist in many languages. The American Heritage® Dictionary of Idioms by Christine Ammer.