**Peggie COLLINS Plaintiff**

v.

**MIAMI–DADE COUNTY, a political subdivision of the State of Florida Defendant**

**No. 03–23314–CIV–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

Feb. 7, 2005.

Derek Vaughn Lewis, Miami, FL, for Peggie Collins, plaintiff.

Lee Alan Kraftchick, Dade County Attorney's Office, Miami, FL, for Miami–Dade County, a political subdivision of the State of Florida, defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

JORDAN, District Judge.

Peggie Collins filed this suit against Miami–Dade County for violating the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., on December 12, 2003. Specifically, Ms. Collins alleges that the County violated the FMLA by giving her a satisfactory performance evaluation and transferring her to an allegedly less prestigious position within the Miami–Dade County Police Department. On March 15, 2004, I granted Ms. Collins leave to file an amended complaint, which she submitted with additional allegations against the County for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991 ("CRA"), and the Florida Civil Rights Act of 1992 ("FCRA") under Chapter 760 of the Florida Statutes.

The County now moves for summary judgment, contending that (1) Ms. Collins failed to show that she suffered any materially adverse employment action; (2) she has failed to show that she was denied leave under the FMLA; (3) she has failed to show that she was treated any less favorably than similarly situated co-workers; and (4) her FCRA claim was not timely filed within the 365–day limitations period. The County further argues that it has shown legitimate reasons for its actions with respect to Ms. Collins, and thus she has not demonstrated that the County's reasons were mere pretext for retaliation or gender discrimination.

For the reasons set forth below, the County's motion for summary judgment [D.E. 17] is GRANTED.

### I. RELEVANT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Hilburn v. Murata Elecs. North Am., Inc., 181 F.3d 1220, 1225 (11th Cir.1999). Thus, the task is to determine whether, considering the evidence in the light most favorable to Ms. Collins, the non-moving party, there is evi-

dence on which a jury could reasonably find a verdict in his favor. *See Liberty Lobby,* 477 U.S. at 251, 106 S.Ct. 2505; *Hilburn,* 181 F.3d at 1225; *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).

## II. RELEVANT FACTS [1]

Ms. Collins has been employed as a police officer with the County Police Department ("Department") since August of 1989. *See* Complaint [D.E. 1], ¶ 12. In April of 1999, she was promoted to the rank of sergeant. *See* Collins Dep. [D.E. 21] at 20. In the summer of 2000, Ms. Collins applied for a transfer to a vacancy in the Professional Compliance Bureau ("PCB"), also referred to as Internal Affairs, which is the unit of the Police Department responsible for investigating allegations against police officers and other Department personnel. *See id.,* ¶ 13. She was subsequently hired and accepted the position. *See id.* Ms. Collins' supervisor at the PCB was Lieutenant Dennis Hatterman. *See* Defendant's Statement of Material Facts [D.E. 19], ¶ 4 ("Def.'s Facts").

On February 27, 2002, Ms. Collins was hospitalized for surgery to remove fibroid tumors from her abdomen. *See* Collins Dep. at 32. She was in the hospital for approximately one week, and remained at home for an additional five weeks until April 15, 2002. *See id.* at 79–80. Upon her request, the leave for Ms. Collins' surgery and recovery was taken from her accumulated leave bank rather than her sick leave bank because she wished to save her sick leave for her retirement. *See id.* at 73, 78–79.

On April 15, 2002, the day upon returning from her leave, Lt. Hatterman in-formed Ms. Collins that she would be transferred to the Department of Homeland Security ("DHS"). *See id.* at 110; Collins Aff., at Ex. 1 to Collins' Statement of Material Facts [D.E. 25], ¶¶ 6, 8. The DHS was a joint operation between the police and fire departments. *See* Collins Dep. at 114. According to Ms. Collins, she was never asked to transfer out of the PCB; rather, she was transferred involuntarily to the DHS. *See id.* The Department's collective bargaining agreement provides for "the right of the Department Directors to transfer employees between units within their Departments for reasons that will improve the effectiveness or efficiency of the Department..." *See id.* at 33; Collective Bargaining Agreement, § 39 at Ex. 1 to Def.'s Facts. Ms. Collins' transfer to the DHS was effective on May 13, 2002. *See* Personnel Change Document at Ex. 4 to Def.'s Facts.

On July 8, 2002, Lt. Hatterman signed an employee performance report regarding Ms. Collins' performance while she was at the PCB for the period of April 2, 2001, to March 31, 2002. *See* Collins Dep. at 100; 2002 Employee Performance Report, at Ex. 2 of Collins' Facts [D.E. 25] ("2002 Report"). Lt. Hatterman rated and wrote the performance report, but Captain Pedro Casanova signed the report as the reviewer. *See* 2002 Report. Lt. Hatterman gave Ms. Collins an overall evaluation of "satisfactory." *See id.* In her performance report for the previous year, Ms. Collins had received a review of "above satisfactory." *See* 2001 Employee Performance Report, at Ex. 2 of Def.'s Facts [D.E. 19] ("2001 Report"). In his 2002 report, Lt. Hatterman provided both positive comments as

---

1. Under Local Rule 7.5, all material facts set forth in the statement served by the moving party, Miami–Dade County, are deemed ad-mitted unless controverted by the opposing party's statement. Where facts are disputed, I accept Ms. Collins' version.

well as criticism concerning Ms. Collin's job performance. *See* 2002 Report.

On August 12, 2002, Ms. Collins submitted a rebuttal to her performance evaluation to challenge certain criticisms written by Lt. Hatterman in the report. *See* Def's Facts, Ex. 7. Specifically, Ms. Collins wrote that the investigatory process—including attending shooting briefings and waiting for homicide and forensics reports—caused some of her cases to take well over a year to complete, even though an average internal affairs investigation takes from thirty days to six months to complete, depending on the complexity of the case. *See id.* Ms. Collins also wrote that she noticed her cases had remained in Lt. Hatterman's "in" basket for prolonged periods of time. *See id.* She further wrote that her leave, including her sick leave due to her surgery, had been pre-approved. *See id.*

Ms. Collins reported to the DHS on July 8, 2002. *See* Collins Aff., ¶ 7. In addition to Ms. Collins, Sergeant Michael Santos was also transferred from the PCB to the DHS, although he was transferred to the police department side of the DHS. *See* Collins Dep. at 112, 114. Ms. Collins considered her transfer a demotion because she was the only individual from the PCB transferring into the fire department section of the DHS, and she believed she did not have the training or knowledge to deal with the fire department's emergency operations center issues and concerns. *See id.* at 111–12.

In August 2002, the DHS was eventually dissolved due to conflicts between Fire Chief Chuck Lanza and the manager of the fire department section. *See id.* at 121–22; Motion for Summary Judgment [D.E. 17] at 5. As a result, everyone in the unit was transferred elsewhere. *See* Collins Dep. at 122. Ms. Collins was transferred to the Animal Services unit. At the time, the police department was taking over Animal Services from the public works department. *See id.* at 125.

On June 30, 2003, Ms. Collins filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR"). *See id.* at 47. She subsequently filed this suit on December 12, 2003, alleging her performance evaluation and transfer out of the PCB violated the FMLA. On February 27, 2004, she amended her complaint to include allegations against the County for violations of Title VII, the CRA, and the FCRA.

### III. ANALYSIS

The County now moves for summary judgment, contending that (1) Ms. Collins failed to show that she suffered any materially adverse employment action; (2) she has failed to show that she was denied leave under the FMLA; (3) she has failed to show that she was treated any less favorably than similarly situated co-workers; and (4) her FCRA claim was not timely filed within the 365 day limitations period. The County further argues that it has shown legitimate reasons for its actions with respect to Ms. Collins, and thus she has not demonstrated that the County's reasons were mere pretext for retaliation or gender discrimination. Ms. Collins responds that (1) a genuine issue of material fact exists regarding whether she suffered an adverse employment action; (2) a causal connection exists between her leave and the County's adverse employment action; (3) she has suffered an adverse financial hardship from the County's violation of the FMLA; (4) she has established a prima facie claim of discrimination under Title VII; and (5) she has also established a

prima facie claim of discrimination under the FCRA. The parties' arguments are addressed below.

## A. RETALIATION CLAIM UNDER FMLA AND TITLE VII

Ms. Collins alleges that she suffered unlawful retaliation under both the FMLA and Title VII because of her gender. The FMLA ensures that employees may take up to twelve weeks of unpaid leave due to, among other things, serious medical conditions. *See* 29 U.S.C. § 2612(a)(1)(D); *Graham v. State Farm Mutual Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir.1999). The FMLA also prohibits employers from discriminating against employees who exercise or attempt to exercise their rights under the FMLA. *See* 29 U.S.C. § 2615(a); *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 798 (11th Cir.2000). Similarly, no person shall be subject to retaliation for opposing any practice made unlawful by Title VII or for participating in any stage of administrative or judicial proceedings under those statutes. 29 C.F.R. § 1614.101(b). When evaluating a claim of retaliation under the FMLA, in the absence of direct evidence of discrimination on the part of the employer, federal courts apply the same burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), for evaluating Title VII retaliatory discharge claims. *See Brungart*, 231 F.3d at 798.

To establish a prima facie claim of discrimination under the FMLA or Title VII, Ms. Collins must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *See*

*Strickland v. Water Works and Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir.2001) (citation omitted). Once a plaintiff has established a prima facie case, the employer has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. *See Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998). The plaintiff then has the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for the prohibited, retaliatory conduct. *See id.*

The County does not contest that Ms. Collins engaged in statutorily protected activity. It does argue, however, that she has failed to establish a prima facie claim of retaliation because she has not shown that she suffered an adverse employment decision. Ms. Collins alleges in her complaint that Lt. Hatterman criticized her in her employee performance report and transferred her from her PCB position to the DHS, in part because she sought leave under the FMLA. *See* Complaint, ¶¶ 18, 20. The County contends that Ms. Collins' satisfactory performance evaluation and transfer to the DHS, and later to Animal Services, do not constitute adverse employment actions, and thus she has failed to state a prima facie case of retaliation.

### 1. ADVERSE EMPLOYMENT ACTION

An adverse employment action does not refer only to ultimate employment decisions, such as a decision to discharge an employee. *See Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir.2002) (citing *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998)). An employer's conduct short of an ultimate employment decision is actionable as an adverse action, but only if such conduct reaches a "threshold level

of substantiality." *See id.* Thus, "while not everything that makes an employee unhappy is an actionable adverse action, conduct that alters an employee's compensation, terms, conditions, or privileges of employment does constitute adverse action." *See id.* (citing *Bass v. Bd. of County Comm'rs,* 256 F.3d 1095, 1118 (11th Cir.2001)). Furthermore, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances," regardless of the employee's subjective view of the adversity of the employment action. *See Davis v. Town of Lake Park,* 245 F.3d 1232, 1239 (11th Cir. 2001) (citation omitted).

### a. PERFORMANCE EVALUATION

■ Ms. Collins argues that her performance evaluation creates a genuine issue of material fact regarding whether the County took an adverse employment action against her. Although she cites no case law or other supporting authority in her response, she alleges in her complaint that Lt. Hatterman criticized her in her employee performance report. *See* Compl., ¶¶ 18. She also argues that Lt. Hatterman's criticism of her job performance, based in part on her taking leave, constitutes an adverse employment action, because such critical language is itself "punitive" and "could be interpreted negative-

ly by an employee." *See* Plaintiff's Response at 6–7 [D.E. 24].[2]

■ This criticism, however, does not raise a genuine issue of material fact that she suffered an adverse employment action with respect to her performance evaluation. Any adversity alleged in an employment action must be material and have a tangible impact on the terms, conditions, or privileges of employment. *See Davis,* 245 F.3d at 1241–42; *Doe v. Dekalb County School Dist.,* 145 F.3d 1441, 1453 (11th Cir.1998). Furthermore, the Eleventh Circuit has held that "criticisms of an employee's job performance—written or oral—that do not lead to tangible job consequences will rarely form a permissible predicate for a Title VII suit." *See Davis,* 245 F.3d at 1242. *See also Lucas v. W.W. Grainger, Inc.,* 257 F.3d 1249, 1261 (11th Cir.2001) ("An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment."). In other words, "the loss of prestige or self-esteem felt by an employee who receives what he believes to be unwarranted job criticism or performance review will rarely—*without more*—establish the adverse action necessary to pursue a claim" under Title VII. *See Davis,* 245 F.3d at 1242 (emphasis added).[3]

Ms. Collins has not shown that she suffered a loss in salary or benefits, ineligibil-

**2.** Lt. Hatterman wrote in his evaluation of Ms. Collins' job performance: "During this rating period [from April 2, 2001, to March 31, 2002], Sergeant Collins was assigned 17 new Internal Affairs investigations, and she was only able to fully complete 5 investigations. Also, on 7 separate occasions, during her duty day assignments, Sergeant Collins was able to resolve the concerns of callers or appropriately refer the matter to District staff, preempting the need to initiate formal investigations. Her overall level of productivity during this rating period declined, requiring several informal sessions with this rater in an

attempt to provide guidance for improvement. *Extensive leave usage, including 5 weeks for surgery and recovery, was a contributing factor.* In an effort to assist her in eliminating her backlog of cases, Sergeant Collins was taken out of rotation for new cases in February 2002; however, the majority of her cases has to be reassigned for completion." *See* Collins' Facts [D.E. 25], Ex. 2 (emphasis added).

**3.** Although the Eleventh Circuit noted in *Doe,* 145 F.3d at 1452 and n. 19, that loss of prestige could be a factor in determining ad-

ity for promotional opportunities, or more formal discipline—such as a reprimand—as a result of her performance evaluation. *See id.* at 1241. Although Ms. Collins claims that the negative language in her evaluation resulted in her transfer to an allegedly less prestigious position, she also acknowledged that she had already been transferred by the time the evaluation was completed in July of 2002. *See* Collins Dep. at 109. Furthermore, the transfer itself does not constitute adverse employment action, as further discussed below. Accordingly, I conclude that a reasonable person would not view Ms. Collins' satisfactory performance evaluation as an adverse employment action. She has not shown that she experienced a tangible impact on the terms, conditions, or privileges of employment, and therefore no genuine issue of material facts exists that she suffered an adverse employment action from the criticism in her performance evaluation.

### b. Transfer from the PCB

■ Ms. Collins also alleges that the Police Department transferred her from the prestigious PCB to the DHS and later to Animal Services as a result of her taking leave and her gender, and such a transfer constitutes an adverse employment action. The County contends that Ms. Collins' transfer is not an adverse employment action. Although she does not directly address this argument in her response, Ms. Collins states that she suffered economic injury because her "net pay diminished upon reporting to DHS," and she considered the transfer as a demo-

tion rather than a promotion. *See* Plaintiff's Response at 2; Collins Aff., ¶¶ 11, 16.

■ As the County points out, however, Ms. Collins testified at her deposition that she "didn't lose any money" when she was transferred to the DHS. *See* Collins Dep. at 113. She also testified that she is receiving the same pay and benefits at Animal Services. *See id.* at 130. Ms. Collins does not provide an explanation as to her contradictory statements. Where an affidavit submitted solely to oppose summary judgement contradicts material facts from deposition testimony, I may disregard that affidavit. *See McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 n. 7 (11th Cir.2003); *Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc.,* 736 F.2d 656, 657 (11th Cir.1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."). I do not entirely disregard Ms. Collins' affidavit statement that her net pay decreased because it could be true that Ms. Collins' *potential* net pay decreased with her transfer since she claims that she lost an opportunity to work discretionary overtime. *See* Plaintiff's Response at 8. Ms. Collins, however, has not presented any other evidence that she suffered a loss in her base salary when she transferred from the PCB, and I must rely on her own deposition testimony that she did not lose any pay in salary upon her transfer. Without more, Ms. Collins'

verse employment action, *Davis* distinguished *Doe* in that "*Doe* does not hold that an asserted loss of prestige can transform employer conduct which does not alter the 'terms, conditions, or privileges' of the plaintiff's employment into a proper basis for suit under Title

VII's anti-discrimination clause. Indeed, discussing the job transfer at issue in that case, we stressed that 'it is not enough that a transfer imposes some de minimis inconvenience or alteration of responsibilities.' " *Davis,* 245 F.3d at 1242 n. 4.

transfer alone is insufficient as an adverse employment action. *See Davis*, 245 F.3d at 1244 (holding that absent an increase in salary, benefits, or unique opportunities for advancement, plaintiff has not shown a transfer constitutes an adverse employment action). *See also Maniccia v. Brown*, 171 F.3d 1364, 1370 n. 3 (11th Cir.1999) (finding no adverse employment action where the employee admitted that she lost no pay or benefits as a result of her transfer).

Ms. Collins further claims that her transfer to the DHS and later to Animal Services constitutes an adverse employment action because she lost an opportunity to earn overtime pay—and therefore a potentially higher calculation for retirement income—when she left the PCB. Specifically, Ms. Collins responds that one of the benefits she accrued at the PCB was "the opportunity for extensive overtime work." *See* Plaintiff's Response at 8.[4] Ms. Collins also responds that her transfer out of the PCB "potentially affects her retirement income" because the retirement pay for a police officer is calculated using the average of the best five years of salary, including overtime pay, received by that officer during her employment. *See id.* at 9 (citing Cassanova Dep., 65).

The Eleventh Circuit has held that, in certain instances, denial of a right to overtime constitutes an adverse employment action. *See Shannon*, 292 F.3d at 716 (holding that a plaintiff who presented evidence that he was "totally blackballed" from overtime in retaliation constitutes an adverse employment action); *Bass*, 256 F.3d at 1118 (holding that the denial of overtime to plaintiff, who showed that

overtime was available to other similarly situated employees, was adverse employment action). The County argues that Ms. Collins should have attempted to transfer to another position within the Department that offered more overtime if she was dissatisfied with the amount of overtime available to her at the DHS or Animal Services. This argument is inapposite; the fact that Ms. Collins could apply for other positions is immaterial as to whether she suffered unlawful retaliation upon her transfer out of the PCB.

Ms. Collins, however, has not shown that she was prevented from working overtime or how much overtime she lost due to her alleged retaliatory transfer. For example, she has not shown that overtime at the PCB was guaranteed, nor has she shown the amount of overtime she actually worked at the PCB or how much overtime was available at the DHS, although Ms. Collins testified that she has no opportunity for overtime at Animal Services. *See* Collins Dep. at 142. Neither has she shown whether she would have actually worked overtime if it were available to her. Indeed, Ms. Collins testified that, as a sergeant, she has a duty to minimize overtime. *See id.* at 144. Even if I assume there was discriminatory animus behind her transfer, Ms. Collins has not demonstrated that overtime was a benefit guaranteed (or substantially guaranteed) to her at any position in the Police Department. The only evidence presented by Ms. Collins is her affidavit submitted to oppose summary judgment, stating that her retirement income has been adversely affected. *See* Collins Aff., ¶ 10. Accordingly, I conclude that Ms. Collins has not shown on

---

4. Although Ms. Collins also cites to a salary comparison that was marked as Exhibit 12 at her deposition, she did not file this salary comparison into the record for purposes of opposing summary judgment.

this record that her loss of potential overtime is an adverse employment action. *See Drew v. Illinois Dept. of Human Servs.*, 101 Fed.Appx. 637, 639, 2004 WL 1367508, at *2 (7th Cir.2004) (citing *Rabinovitz v. Pena*, 89 F.3d 482, 488–89 (7th Cir.1996)) (holding that an adverse employment action does not include an employer's denial of overtime where such benefit was purely discretionary and not automatically entitled); *Broska v. Henderson*, 70 Fed.Appx. 262, 267–69, 2003 WL 21518733, at *4–5 (6th Cir.2003) (although reduction in overtime could constitute an adverse employment action, summary judgment was warranted where the plaintiff failed to present either evidence showing that he was denied overtime that others received or the amount of overtime he lost due to retaliation).

In addition to claiming a loss in pay and overtime, Ms. Collins claims that she suffered a loss in prestige because her transfer to the DHS and later to Animal Services was a demotion from the more prestigious position at the PCB. *See* Complaint, ¶ 20; Plaintiff's Response at 3. She similarly testified at her deposition that she believed her transfer was a demotion, *see* Collins Dep. at 111, although she acknowledged that her position at the DHS would be viewed by some people as a promotion as well as an "honorable position," *see id.* at 113.

■ Notwithstanding her own admission that her transfer could be objectively viewed as a promotion, loss of prestige due to a job transfer does not constitute an adverse employment action under Eleventh Circuit law. *See Davis*, 245 F.3d at 1245 ("[A]n employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm, will be outside the protection af-

forded by Congress in Title VII's anti-discrimination clause..."). As discussed above with regards to Ms. Collins' performance evaluation, a perceived loss of prestige accompanying her transfer is insufficient to constitute adverse employment action without a showing that she suffered a tangible injury, such as a loss in pay. *See supra* note 3. Because Ms. Collins has not demonstrated that her transfer to the DHS resulted in a loss of salary or other tangible benefit, no genuine issue of material fact exists that she suffered any adverse employment action.

## 2. CAUSAL CONNECTION

■ Assuming Ms. Collins can sufficiently establish that she suffered an adverse employment action to get to a jury—and I find that she cannot—she must also show that the adverse employment decision was causally related to her protected activity. *See Strickland*, 239 F.3d at 1207. She contends that the temporal proximity of the criticism in her performance evaluation and her taking medical leave raises a genuine issue of material fact that a causal connection exists. The Eleventh Circuit has held that "the causal link requirement under Title VII must be construed broadly; a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998). *See also Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.2001). For example, the causality prong is satisfied where the plaintiff provides sufficient evidence that the decision-maker became aware of the protected activity, and that there was close temporal proximity between when the supervisor learned of protected activity and adverse employment action. *See Farley v.*

*Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1999). "Close temporal proximity between the protected activity and the adverse action may be sufficient to show that the two were not wholly unrelated." *See Bass,* 256 F.3d at 1119.

Ms. Collins has shown that Lt. Hatterman was aware of her participation in protected activity—her taking medical leave—when he completed the performance evaluation. Specifically, he wrote in the evaluation that her leave was a contributing factor in the decline of her productivity at the PCB. *See* 2002 Report, at Ex. 2 to Collins' Facts. Ms. Collins has also shown that close temporal proximity exists as to the protected activity and the criticism in her performance evaluation. *See Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 590 (11th Cir.2000). That is, Ms. Collins took leave between February and April of 2002, and Lt. Hatterman completed her performance evaluation in July of 2002. Lt. Hatterman's awareness of Ms. Collins' taking FMLA leave and a close temporal proximity, however, are insufficient to establish a prima facie retaliation claim without a showing of an adverse employment action. Because Ms. Collins has not demonstrated that the County took an adverse employment action against her, as previously discussed, she fails to establish a prima facie claim of retaliation under the FMLA or Title VII.

**B. FMLA INJURY**

The County also contends that Ms. Collins has not shown that she was denied leave under the FMLA or suffered any injury under the FMLA because she received all of the leave she requested. Ms. Collins does not directly address this argument in her response, though she alleges in her complaint that the County violated the FMLA by retaliating against her with criticism in her performance evaluation and by transferring her to the DHS. *See* Complaint, ¶¶ 24–25. The Eleventh Circuit held in *Graham v. State Farm Mutual Ins. Co.,* 193 F.3d 1274, 1275 (11th Cir. 1999) (per curiam), that "a plaintiff suffers no FMLA injury when she receives all the leave she requests, and indeed is paid for most of it." Ms. Collins testified at her deposition that she received the time off she requested while at the PCB and was paid for it. *See* Collins Dep. at 153–54. Therefore, even if I were to find that there is an issue of fact as to whether the County unlawfully retaliated against Ms. Collins due to her FMLA leave—and I do not— she may not recover in the absence of damages. *See Graham,* 193 F.3d at 1284 (citations omitted) (holding that "[e]ven if the defendants have committed certain infractions under the FMLA, plaintiff may not recover in the absence of damages.").

**C. TITLE VII GENDER DISCRIMINATION CLAIM**

The County next argues that Ms. Collins cannot show that any other similarly situated employee was treated more favorably than her, and she cannot show that the proffered reasons for the County's actions were mere pretext for retaliation or discrimination. In Title VII disparate treatment cases, courts use the evidentiary framework set out by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Commun. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), to determine whether the evidence is sufficient to prove that intentional discrimination has occurred. Absent direct evidence of discrimination, a plaintiff can establish intentional

discrimination under the three-part burden-shifting analysis set forth by the Supreme Court in *McDonnell Douglas* and *Burdine.*

### 1. THE PRIMA FACIE CASE

 A plaintiff must first establish a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *McDonnell Douglas,* 411 U.S. at 802–804, 93 S.Ct. 1817; *Burdine,* 450 U.S. at 252–256, 101 S.Ct. 1089; *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 505–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Wilson v. B/E Aero., Inc.,* 376 F.3d 1079, 1087 (11th Cir.2004). The burden of establishing a prima facie case of disparate treatment is not onerous. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089. Yet, to establish a prima facie case, a plaintiff must adduce evidence tending to show that the challenged adverse employment action is not readily explainable by meritorious reasons. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. For example, a prima facie case of disparate treatment is established where the complainant shows: (1) that she belongs to a protected class; (2) that she suffered an adverse employment action; (3) that she and a similarly situated nonprotected person were dissimilarly treated; and (4) that the employment action was causally related to the protected status. *Perkins v. School Board of Pinellas County,* 902 F.Supp. 1503, 1506–7 (M.D.Fla. 1995) (citing *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct.

2574, 49 L.Ed.2d 493 (1976)).[5] *See also Wilson,* 376 F.3d at 1087 ("A plaintiff establishes a prima facie case of disparate treatment by showing that she was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class. The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation.").

 With regards to Ms. Collins' disparate treatment claim, the County first contends that she cannot show that any other similarly situated employee was treated more favorably than her. Ms. Collins responds that she was treated differently than another similarly situated employee, Michael Santos, another sergeant who was also transferred to the DHS from the PCB. *See* Response at 13. Ms. Collins argues that Mr. Santos was transferred from the PCB to the police section of the DHS, whereas she was transferred to the fire department section. To demonstrate that other employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant respects. *See Knight v. Baptist Hosp. of Miami, Inc.,* 330 F.3d 1313, 1316 (11th Cir.2003). In determining whether employees are similarly situated, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined or treated in different ways. *Id.*

While Ms. Collins argues that Mr. Santos did not receive the same adverse em-

---

5. These factors represent just one formulation by which a plaintiff can establish a prima facie case. Under *McDonnell Douglas,* these elements are flexible and must be tailored, on a case by case basis, to differing factual circumstances. *See* BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 15

(3d ed.1997); *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817 ("The facts necessarily will vary in Title VII cases, and the specification ... of the prima facie proof required from the plaintiff is not necessarily applicable in every respect to differing factual situations.").

ployment action, she fails to present evidence that Mr. Santos was given a similar performance evaluation at the PCB, yet was transferred to the police department section—instead of the fire department section—of the DHS. There is simply no evidence in the record regarding Mr. Santos' employment review at the PCB.

Ms. Collins also fails to show that Mr. Santos' transfer to the police department section of the DHS was a materially better position than her transfer to the fire department section of the DHS. Despite the fact that Ms. Collins felt she needed additional training to work in the fire department section of the DHS, *see* Collins Dep. at 117, she testified that she and Mr. Santos essentially had the same job and same pay at the DHS, *see id.* at 112–13. Therefore, viewing the evidence in the light most favorable to her, Ms. Collins simply fails to establish a prima facie case. She has not demonstrated that she and a similarly situated employee were treated differently by the County.

### 2. The Employer's Burden of Producing Evidence

 Assuming Ms. Collins can establish a prima facie case of disparate treatment—and I find that she cannot—the burden of production then shifts to the County to articulate some legitimate, nondiscriminatory reason for the adverse action in order to rebut the inference of discrimination. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. "Because the defendant need only produce, not

prove, a nondiscriminatory reason, this burden is exceedingly light." *Perryman v. Johnson Products Co.*, 698 F.2d 1138, 1142 (11th Cir.1983). In order to rebut the plaintiff's prima facie case, the defendant must "clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *See Burdine*, 450 U.S. at 255, 101 S.Ct. 1089.

I find that the County has easily met its burden of production in this case with regards to Ms. Collins' performance evaluation and transfer. Although Ms. Collins argues that her transfer to the DHS was due to her gender, the County has shown legitimate, nondiscriminatory reasons for Ms. Collins' transfer. For example, Lt. Hatterman wrote that Ms. Collins was assigned seventeen new Internal Affairs investigations, but was only able to complete five investigations. *See* 2002 Report. He also wrote that Ms. Collins was taken out of rotation for new cases in February of 2002, and the majority of her cases had been reassigned for their completion. *See id.*[6] Moreover, Lt. Hatterman also noted that Ms. Collins "did not demonstrate sufficient time and case management skills to complete her assigned cases in a timely manner. This difficulty is also due, in part, to her inability to prioritize and organize her work schedule in order to meet the investigative requirements of her cases (see summary)." *See id.*

The County has also met its burden with regard to Ms. Collins' transfer from the DHS to Animal Services. Ms. Collins acknowledged at her deposition that the DHS was disbanded due to conflicts be-

---

**6.** Despite the County's assertions, the evidence is unclear whether Ms. Collins was taken out of rotation prior to her taking leave on February 27, 2002. For example, although the County claims that Ms. Collins

agrees she was taken out of rotation in February *before* her leave, *see* Motion for Summary Judgment at 4 n. 3, the deposition pages cited by the County do not demonstrate this, *see* Collins Dep. at 107–08.

tween Chief Lanza and the manager of the fire department section. *See* Collins Dep. at 121–22. As a result, the entire DHS unit was disbanded and everyone in the unit was transferred. *See id.* at 122.

■■■■ The evidence presented by the County demonstrates that it had legitimate, non-discriminatory reasons for Ms. Collins' transfer. Even if the County was mistaken about the Ms. Collins performance at the PCB, my inquiry must center around the County's reasonable belief that its proffered reasons were correct. Indeed, federal courts "do not sit as a super-personnel department that reexamines an entity's business decisions." *See Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000). No matter how medieval, high-handed, or mistaken the employer's managers, "[the] inquiry is limited to whether the employer gave an honest explanation of its behavior." *See id.* It is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not motivated by improper reasons. *See Alexander v. Fulton County,* 207 F.3d 1303, 1341 (11th Cir. 2000). Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. *See Chapman,* 229 F.3d at 1030. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See id.* at 1024–25.

Here, the proffered reasons for the County's actions against Ms. Collins clearly meet the test of being those which might motivate a reasonable employer. Indeed, Ms. Collins' inability to complete or manage her caseload at the PCB is an imminently reasonable basis upon which to transfer her out of the PCB. Similarly, the County has shown that Ms. Collins, along with everyone else in the DHS, was transferred because the unit dissolved. As discussed below, Ms. Collins has not shown the County's reasons were pretextual. Therefore, the County is entitled to summary judgment on Ms. Collins disparate treatment claim based on her transfer.

### 3. PROOF OF PRETEXT

■■■■ In the third prong of the *McDonnell Douglas* burden-shifting analysis, if the defendant successfully presents evidence of a legitimate, nondiscriminatory reason, the plaintiff still may prevail by proving that the proffered justification was a pretext for discrimination. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. 1089. The employer who produces evidence of a nondiscriminatory reason is entitled to summary judgement unless the plaintiff proffers evidence sufficient to create a genuine issue of material fact that discrimination was actually the reason for the challenged action. *See Kelliher v. Veneman,* 313 F.3d 1270, 1275 (11th Cir.2002). The evidence and inferences that can be properly drawn from the evidence presented during the plaintiff's prima facie case may be considered in determining whether the defendant's explanation is pretextual. *See Hicks,* 509 U.S. at 506–508, 113 S.Ct. 2742.

■■■ As stated earlier, the County's evidence of Ms. Collins' inability to complete or manage her caseload at the PCB constitutes adequate non-discriminatory reasons for her transfer. As such, Ms. Collins bears the burden of proving that the proffered justification for her transfer was a

pretext. For the same reasons that Ms. Collins has failed to establish a prima facie case of disparate treatment, she also has failed to prove that the County's non-discriminatory reasons were pretextual. For example, she has not shown that the Department treated her different than other male employees or transferred her out of the PCB because she is female. Ms. Collins has simply failed to present sufficient evidence to contradict the numerous reasons proffered by the County to convince me that a genuine issue of material fact exists that its asserted reasons were a pretext for transferring Ms. Collins because of her gender.

### D. FCRA CLAIM

■■■ Finally, the County contends that Ms. Collins' FCRA claim, filed with the FCHR on June 30, 2003, was not timely filed within 365 days of the alleged act of discrimination. The County argues that the alleged act of discrimination occurred on May 13, 2002, which was her official transfer date to the DHS. Ms. Collins responds that her FCRA is timely because she reported to the DHS on July 8, 2002.

■■■ The FCRA's purpose is "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap or marital status." *See Woodham v. Blue Cross and Blue Shield of Florida, Inc.*, 829 So.2d 891, 894 (Fla.2002) (citing FLA. STAT. § 760.01(2) (1999)). The FCRA is patterned after Title VII; therefore, federal case law dealing with Title VII is applicable to cases brought under the FCRA. *See Maniccia*, 171 F.3d at 1368 n. 2; *Florida State Univ. v. Sondel*, 685 So.2d 923, 925 n. 1 (1996). The FCRA requires that a claimant file a complaint with the FCHR within 365 days of the alleged violation.

*See Woodham*, 829 So.2d at 894 (citing FLA. STAT. § 760.11(1) (1999)).

Ms. Collins stated at her deposition that Lt. Hatterman informed her of her transfer out of the PCB on April 15, 2002, the day of her return from medical leave. *See* Collins Aff., ¶ 4. She also testified that she had already accepted the transfer to the DHS at the time Lt. Hatterman completed her performance evaluation in July of 2002. *See* Collins Dep. at 109. Although Ms. Collins was notified of her transfer on or about April 15, 2002, she did not report to the DHS until July 8, 2002. Therefore, Ms. Collins argues that the 365 day period in which to file a complaint with the FCHR should not accrue until she actually began her DHS position on July 8, 2002.

The Supreme Court has ruled in *Delaware State College v. Ricks*, 449 U.S. 250, 259, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), that the limitations periods for a Title VII complaint begins running at the time the actual decision of the allegedly unlawful employment practice was made, and not when the effects of the decision began. Thus, in *Ricks*, the Supreme Court held that the limitations period began when the plaintiff was denied tenure, and not when he was terminated, which was an effect of the denial of his tenure. *See id.* at 257–59, 101 S.Ct. 498. *See also Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (holding that the applicable limitations period begins to run when notice of termination was given, and not on the date when employment actually terminated). The Eleventh Circuit has followed *Ricks*, in cases such as *Calhoun v. Fed. Nat'l Mortgage Assoc.*, 823 F.2d 451, 455–56 (11th Cir.1987), where it held that the limitations period for an ADEA claim begins to run when the plaintiff received notice of his termination, even though he

remained on payroll and was actually retired a year later. *See also Grayson v. K Mart Corp.,* 79 F.3d 1086, 1100 n. 19 (11th Cir.1996) (citations omitted) (noting that the limitations period does not begin to run until the employee receives unequivocal notice of the adverse employment decision).

Ms. Collins received notice that she would be transferred out of the PCB on April 15, 2002. The Department's Personnel Change Document issued for Ms. Collins indicates that her effective date of transfer to the DHS was May 13, 2002. *See* Def.'s Facts, Ex. 4. The case law, however, is clear that the limitations period begins on the date when Ms. Collins actually received notice of her transfer, which was April 15, 2002, according to her own affidavit. *See id.* Accordingly, I conclude that the limitations period on her claim to the FCHR began to run on April 15, 2002, and not when she actually reported to the DHS on July 8, 2002. At best, the period began to run on May 13, 2002, when she received formal notice of the transfer.

Ms. Collins testified that she filed a charge with the FCHR on June 30, 2003, *see* Collins Dep. at 47, and the FCHR sent her a letter dated July 9, 2003, confirming their receipt of her complaint of an unlawful employment practice; *see* Response, Ex. F. Ms. Collins does not allege in her complaint or her amended complaint that the County's allegedly discriminatory acts continued up until her actual transfer date to the DHS. "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Ricks,* 449 U.S. at 257, 101 S.Ct. 498. Because Ms. Collins presents no evidence that she filed a complaint with the FCHR prior to April 15,

2003, or May 13, 2003—within the 365–day period from when she received actual notice or formal notice of her transfer—no genuine issue of material fact exists as to the County's contention that her FCRA allegations are untimely. Accordingly, I conclude that Ms. Collins' FCRA claim is barred.

### E. Conclusion

In sum, the County's motion for summary judgment [D.E. 17] is GRANTED. Final judgment will be issued separately.