United States Court of Appeals,

Eleventh Circuit.

No. 97-2223.

Michael J. OLMSTED, Plaintiff-Appellant,

v.

TACO BELL CORPORATION, Defendant-Appellee.

May 28, 1998

Appeal from the United States District Court for the Northern District of Florida. (No. 93-30306/LAC), Lacey A. Collier, Judge.

Before BIRCH, Circuit Judge, and HILL and KRAVITCH, Senior Circuit Judges.

BIRCH, Circuit Judge:

In this employment discrimination action, a jury found that defendant-appellee Taco Bell Corporation ("Taco Bell") retaliated against plaintiff-appellant Michael J. Olmsted in response to Olmsted's complaints of discriminatory practices within Taco Bell and awarded both compensatory and punitive damages. The district court found that the jury verdict was not supported by the evidence adduced at trial and, in granting judgment as a matter of law in favor of Taco Bell, struck the award of punitive damages, reduced the award of compensatory damages, and ultimately set aside the jury's verdict. Olmsted appeals these orders and asks that we reinstate both the verdict and damages awards. For the reasons that follow, we AFFIRM in part and REVERSE in part.

I. FACTUAL BACKGROUND

From October 1990 until July 1993, Michael Olmsted, a white male, worked for Taco Bell as an assistant restaurant manager at its North Davis Highway restaurant ("the restaurant") in Pensacola, Florida. In January of 1993, Olmsted spoke to both Rick Stone, the manager of the restaurant, and David Higgins, a manager for one of Taco Bell's human resources divisions, about

what Olmsted perceived to be racially discriminatory behavior at the restaurant. Olmsted also faxed a letter to Richard Klein, the manager of Taco Bell's Equal Employment Opportunity division, reporting Olmsted's impressions of racially motivated conduct at the restaurant. According to Olmsted's trial testimony, Klein initially appeared helpful and interested in Olmsted's allegations and assured Olmsted that he would communicate with him in the future. Klein, however, did not follow up on the initial conversation and, when Olmsted eventually contacted him, was evasive.

Olmsted testified that following his complaint of race discrimination, he was treated differently by various Taco Bell supervisory personnel. In June, 1993, Rick Stone gave Olmsted an "employee consultation memorandum," a type of disciplinary action at Taco Bell. The memorandum stated that "it had been alleged" that Olmsted had violated one of Taco Bell's cash handling policies; the memorandum further stated that "[a]t the present time we cannot confirm whether the above activity is taking place. However, if we are able to confirm this type of activity, or any other policy violation, it would result in termination." R7-104. Stone noted on the memorandum that Olmsted had been counseled previously with respect this type of infraction---a fact that Olmsted disputed both at the time he received the memorandum and at trial. Olmsted also disputed that he had committed any cash-handling violation and testified that neither Stone nor any other Taco Bell administrator ever confirmed the veracity of the allegation contained in the memorandum. Olmsted testified that, until June, he had neither received an employee consultation memorandum during his tenure with Taco Bell nor had he ever seen any other employee threatened with termination based on an unconfirmed allegation.

Shortly after he received the referenced memorandum, Olmsted was transferred to a different Taco Bell restaurant on Navy Boulevard that was managed, during the relevant time period, by Brenda Mepham. On July 1, 1993, Olmsted notified Mepham by telephone that he would not be

able to work that day because his wife required emergency surgery. According to Olmsted's testimony, neither Olmsted nor Mepham was certain as to whether Olmsted was entitled to a sick day at that point; Mepham informed Olmsted that "if you don't have anything, then you can come in and work it on one of the days off later in the week." R7-116. Mepham apparently left for vacation the day after this conversation took place. Olmsted, in the meantime, ascertained that he had been entitled to a sick day and, in filling out the payroll report for the month during Mepham's absence, reported that he should be compensated for July 1.[1] On July 16, 1993, after Mepham had returned to the restaurant following her vacation, Mepham verbally informed Olmsted that he was suspended from work for falsifying time records. During this same exchange, Mepham also provided Olmsted with three memoranda accusing Olmsted of various violations of company cash-handling policy that he allegedly had committed several weeks earlier. Two of the memoranda stated that Olmsted had been verbally warned that he had violated company policies on the day the violations occurred---a fact that Olmsted contends is false. On July 27, 1993, Taco Bell terminated Olmsted from employment for falsifying time records.

Olmsted filed the instant action pursuant to Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-3 (Title VII) and 42 U.S.C. § 1981. The case was tried before a jury. At the close of Olmsted's case, Taco Bell moved for judgment as a matter of law on the grounds that Mepham alone made the decision to terminate Olmsted and that Olmsted had failed to show that Mepham knew of his complaints of racial discrimination when she fired him. The court noted that it would take the motion under advisement but did not rule on the motion during the pendency of the trial.

---

[1] It is undisputed that Taco Bell's computerized payroll system did not distinguish between paid days in which an employee worked and paid sick leave. The only way to represent the pay status of an employee who had taken a sick day to which he was entitled, therefore, was to indicate that the day in question was a paid work day—rather than a vacation day or an unpaid day—for that employee.

Following the presentation of Taco Bell's evidence, the jury found in favor of Olmsted and awarded $10,000 in back pay, $450,000 in compensatory damages, and $3 million in punitive damages.

The district court subsequently filed two orders that are relevant to this appeal. In the first order, the court granted Taco Bell's request to reduce the amount of damages awarded to Olmsted. The basis for the court's ruling was that Olmsted effectively had abandoned his § 1981 claim prior to trial and, as a result, was bound by the statutory damages cap under Title VII. In the second order, entitled "Order Granting Defendant's Motion For Judgment As A Matter of Law Made At Close of Plaintiff's Case," R5-162, the court determined that Mepham had been the sole decisionmaker with respect to Olmsted's termination, that Olmsted had failed to prove that his discharge was retaliatory in nature, and that Olmsted thus had failed to establish a prima facie case of retaliation under Title VII. Consistent with these findings, the court set aside the verdict and entered judgment in favor of Taco Bell.

## II. DISCUSSION

### A. *The Jury's Finding of Liability*

We review *de novo* a district court's order granting a renewed judgment as a matter of law under Federal Rule of Civil Procedure 50(b). *See Gilchrist Timber Co. v. ITT Rayonier, Inc.,* 127 F.3d 1390, 1392 (11th Cir.1997). "In reviewing the sufficiency of the evidence to support the jury's verdict, we draw all reasonable inferences in favor of the nonmovant ... in order to determine whether or not reasonable jurors could have concluded as this jury did based on all the evidence presented." *Morro v. City of Birmingham,* 117 F.3d 508, 513 (11th Cir.1997) (internal citation and quotation marks omitted). We previously have noted that, in conducting our review of a renewed motion for judgment as a matter of law after a jury has rendered its verdict, "[w]e must determine "whether the evidence is such that, without weighing the credibility of the witnesses or otherwise

considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.' " *Gilchrist,* 127 F.3d at 1392 (quoting *Rabun v. Kimberly-Clark Corp.,* 678 F.2d 1053, 1057 (11th Cir.1982)).

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events. *See Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994). We previously have noted that the causal link requirement under Title VII must be construed broadly; "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *E.E.O.C. v. Reichhold Chem., Inc.,* 988 F.2d 1564, 1571-72 (11th Cir.1993). Once the prima facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct. *See Meeks,* 15 F.3d at 1021.

It is undisputed that Olmsted has met the first two elements of his prima facie case of retaliatory discrimination, *i.e.,* that he engaged in statutorily protected conduct (reporting alleged race discrimination) and suffered an adverse employment action (termination). The dispute centers solely on whether Olmsted demonstrated at trial the existence of a causal relationship between his protected conduct and eventual termination to a degree that reasonably supports the jury's determination. As noted, the district court found that Mepham was the only individual responsible for Olmsted's suspension and termination and that Olmsted had failed to prove at trial that Mepham was aware of Olmsted's complaint of race discrimination; thus, according to the court's findings, Olmsted did not establish the necessary causal link between the protected conduct and adverse job

action and, consequently, failed to set forth a prima facie case of retaliation.

Having independently reviewed the record in this case, however, we believe that the jury's verdict is amply supported by the testimony adduced at trial. Although we acknowledge that the district court's opinion accurately represents evidence that was presented in support of Taco Bell's defense, the jury also considered this evidence but found the testimony offered by Olmsted (notably absent from the district court's discussion) to be more credible. It is critical to reiterate that our task at this point in the proceedings is to resolve all reasonable inferences in favor of the non-movant; indeed, the fact that the evidence in this case strongly suggests arguable interpretations points in favor of sustaining the jury's verdict. *See Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989) ("[T]here must be a substantial conflict in evidence to support a jury question.").

Maridell Thompson testified that the individuals involved in making the decision to terminate included herself, Mepham, Higgins, and Klein. *See* R8-101. As previously mentioned, it is beyond dispute that at least Thompson, Higgins, and Klein were aware of Olmsted's complaints of racial discrimination at the restaurant. Thompson further testified that no one person made the decision to fire Olmsted and that it was a "consensus decision." *Id.* Thompson also stated in her testimony that both she, Higgins, Klein, and Stone had all participated on some level in preparing the first employee consultation memorandum that Olmsted received in June, 1993. *See id.* at 97. Moreover, Stone testified that he recalled Higgins stating, at a meeting in May 1993, that Olmsted "wasn't going to be with the company much longer in the future." *Id.* at 190. Although these bits of evidence are not necessarily conclusive proof that the decision to terminate Olmsted was at least influenced by individuals other than Mepham—individuals who unequivocally had knowledge of Olmsted previous complaints—conclusive proof of the plaintiff's theory of the case is not required to support a jury's determination; rather, the evidence summarized above compels us to conclude

that a reasonable jury *could* have concluded, as this jury did, that Taco Bell's decision to suspend and terminate Olmsted was causally related to his complaints of racially motivated conduct. *See Quick v. Peoples Bank of Cullman County,* 993 F.2d 793, 797 (11th Cir.1993) ("When reviewing ... a challenge [to the sufficiency of the evidence], the question is whether or not reasonable jurors could have concluded as this jury did based on the evidence presented.") (citation and internal quotation marks omitted). We conclude that the district court erred in granting judgment as a matter of law in favor of Taco Bell and, thereby, in setting aside the jury's verdict. We therefore reverse the district court as to the issue of Taco Bell's liability.

B. *Damages Award*

Prior to entering its order granting judgment as a matter of law on the primary liability question, the district court decided that the damages awarded by the jury must be reduced in conformity with the damages cap applicable to Title VII actions, as set forth in 42 U.S.C. § 1981a.[2] The court noted that, although Olmsted initially filed this action under both Title VII, for which potential damages awards have been limited by statute, and 42 U.S.C. § 1981(a), which has *no* statutory damages cap, Olmsted effectively abandoned his § 1981(a) claim in the pre-trial stipulation

---

[2]42 U.S.C. § 1981a(3) sets forth specific limitations on the amount of damages available to prevailing plaintiffs under Title VII and provides, in relevant part:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party—
>
>> ... in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(3)(D).

and in subsequent proceedings prior to trial.

We review the trial court's interpretation of a pretrial order for abuse of discretion. *Thrift v. Hubbard,* 44 F.3d 348, 356 (5th Cir.1995). Federal Rules of Civil Procedure 16(e) dictates that the pretrial order "shall control the subsequent course of the action unless modified by a subsequent order." Here, although we acknowledge the potential confusion for plaintiffs in differentiating between the amendment to Title VII that is embodied in 42 U.S.C. § 1981a and the cause of action created by 42 U.S.C. § 1981(a), we cannot conclude in this instance that the district court's construction of the pretrial order—that is, that Olmsted abandoned his § 1981(a) claim by virtue of the pretrial stipulation—was unreasonable. As observed by the district court, the pretrial stipulation does not reference § 1981(a) at any point. Olmsted contends that the reference in the pretrial statement to the Civil Rights Act of 1991, *see* R3-110 at 3, encompasses both Title VII and § 1981; however, the reference to the Civil Rights Act of 1991 mentions only § 1981a, not § 1981(a). While we are reluctant to engage in an overly technical reading of a pleading when the dispositive factor is the apparent absence of a set of parentheses, these parentheses unfortunately control our decision. It is worth noting that the complaint *correctly* cites to § 1981 and Title VII; we therefore can assume that, notwithstanding the understandable confusion with respect to the closely numbered statutory provisions at issue here, the drafter of both the complaint and the pretrial stipulation knew the difference between the two statutory avenues of relief.

Olmsted argues that, were the abandonment of the § 1981 claim clear and unequivocal, the district court would not have requested post-trial briefing on the question of damages. Immediately after the jury rendered its verdict, the following colloquy took place between defense counsel and the court:

> Mr. Lipps: Your Honor, I do have one final motion that I do think is appropriate at this juncture. The statute under Title VII has an amount for compensatory and punitives of a

maximum of 300,000, so I ask that—the Court indicated it would enter judgment consistent with the verdict.

The Court: I said in accordance to the law as well, which was meant to encompass that.

Mr. Lipps: So the judgment will be the $300,000 cap? I do believe back pay is separate from that.

The Court: Unless I'm shown otherwise, and you can include any comments you might have in that regard, Mr. Emmanuel, in your brief.

R10-91. Significantly, the requested briefing resulted in a memorandum from Olmsted detailing the availability of unlimited damages pursuant to § 1981(a), and a memorandum from Taco Bell asserting that Olmsted had waived or abandoned the § 1981(a) claim. Regardless of the possible miscommunication that may have existed between the parties—and quite possibly between the parties and the court—in this instance, we do not construe the district court's request for briefing on the question of damages to be an indication that the court was tentative about the continued viability of the § 1981(a) claim; the court's suggestion that the parties include a discussion of the appropriate measure of damages, along with the other issues that needed to be addressed post-trial, appears to indicate a desire to refrain from issuing an immediate, oral decision on these matters from the bench.[3] Again, although we appreciate the potential for confusion in pleading causes of action based

---

[3]Conversely, the following colloquy is relied upon by both the district court and Taco Bell to demonstrate that Olmsted had waived his § 1981(a) claim:

> Mr. Lipps: Your Honor, one further matter on punitive damages. I do want to be sure that we're all of the same view. Let me suggest my view. This case does arise under Title VII, Civil Rights Act, according to the pretrial statement and, therefore, there would be, I realize it's not a matter to instruct the jury, but would be a cap of $300,000 under Title VII for compensatory and punitive combined. And that is my understanding of the law under Title VII, so I wanted to advise the Court.
>
> The Court: I think that is a general statement of the law as I understand it. Any comment at this point?

on both Title VII and § 1981, we believe that the district court acted within its discretionary authority in construing the pretrial statement as evincing an abandonment of the § 1981 claim. Accordingly, the court did not abuse its discretion in reducing the damages award consistent with the limitations placed on Title VII damages that is embodied in 42 U.S.C. § 1981a.[4]

---

> Mr. Emmanuel:  Your Honor, I agree with what counsel is indicating.  That is something the jury should not be informed of.  If the jury comes back with punitives in excess of that, that would be an issue for the Court to take up at that time.

> R9-237. We find this exchange to be open to varying interpretations.  On the one hand, as Taco Bell avers, plaintiff's counsel appears to "agree" with the proposition that this case arises under Title VII (And, implicitly, only Title VII) with its concomitant cap on available damages;  on the other hand, it is also reasonable to infer, as Olmsted suggests, that plaintiff's counsel agrees solely with the proposition that the jury should not be informed of the issue of a possible damages cap one way or the other.  Contrary to Taco Bell's suggestion, we decline to interpret this colloquy as further evidence that Olmsted waived his § 1981(a) cause of action.

[4]Notably, our prior decisional law leaves unclear whether Olmsted could have prevailed on his § 1981 claim even if we were to find that the claim had not been abandoned in the pretrial statement.  Taco Bell points out that our decision in *Little v. United Technologies,* 103 F.3d 956 (11th Cir.1997), seems to indicate that the concerns underlying a retaliation action brought pursuant to Title VII and § 1981 might, in some circumstances, be different.  We acknowledge that *Little* can be read to prohibit suits under § 1981 where the retaliation alleged is not based on the race of the complainant;  we further note, however, that prior to our discussion of the plaintiff's § 1981 claim in that case, we discussed at length—in the context of Title VII—our determination that the plaintiff had not shown that he had engaged in statutorily protected conduct that would give rise to a retaliation claim.  *See id.* at 9959-60.  *Little,* therefore, does not stand unambiguously for the proposition argued by defendants, particularly in light of the facts presented in that case, *i.e.,* that there had been no showing of retaliation on the basis of the race of either the plaintiff or of the subject matter about which the plaintiff had complained.  Indeed, the scope of relief available under § 1981 with respect to retaliation claims appears to remain largely an open question in this circuit.  *See, e.g., Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1007 (11th Cir.1997) (where white employees allegedly were retaliated against for complaining of discrimination against black employees, white plaintiffs had standing to proceed under § 1981);  *Reynolds v. CSX Transportation, Inc.,* 115 F.3d 860, 868 n. 10 (11th Cir.1997)("In its entry of judgment, the district court noted that the damages awarded for retaliation could be based on either Title VII or § 1981.  This court has not yet addressed the types of retaliation claims cognizable under § 1981 in light of the Civil Rights Act of 1991.").  In light of our conclusion with respect to Olmsted's abandonment of his § 1981 claim in this case, we need not resolve the precise contours of § 1981, as amended by the 1991 Act, with respect to

III. CONCLUSION

In this employment discrimination action, Olmsted asks that we reverse the district court's orders granting judgment as a matter of law in favor of Taco Bell, thereby setting aside a jury's finding of liability in favor of Olmsted, and reducing the damages award in conformity with the limitations on damages available under Title VII. We conclude that the district court erred in granting judgment as a matter of law with respect to the issue of Taco Bell's liability. We therefore reinstate the jury's verdict finding in favor of Olmsted on the question of retaliatory discharge. We further find, however, that Olmsted waived his claim initially brought pursuant to 42 U.S.C. § 1981. Accordingly, the district court properly reduced the award of damages consistent with the damages cap set forth in 42 U.S.C. § 1981a, as applied to Title VII actions.

AFFIRMED in part, REVERSED in part, and REMANDED for reinstatement of the jury's verdict. Olmsted's motion for attorney's fees is remanded to the district court for a determination consistent with this opinion.

---

retaliation claims.