[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14849

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 20, 2011
JOHN LEY
CLERK

D. C. Docket No. 2:07-cv-01698-SLB


DEBORAH  LEETH,

                                                                          Plaintiff-Appellant,

                                              versus

TYSON FOODS, INC.,

                                                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(December 20, 2011)


Before DUBINA and COX, Circuit Judges, and HUNT,* Judge.

PER CURIAM:

---

*  Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

Deborah Leeth, an African-American woman, works at a chicken plant in Alabama owned and operated by Tyson Foods, Inc. Leeth sued Tyson asserting a claim under the Americans with Disabilities Act, 42 U.S.C. § 12112, as well as claims of race discrimination, sex discrimination (harassment), and retaliation brought under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e-2, 2000e-3(a). She conceded her ADA claim in the district court and she does not challenge the dismissal of her race discrimination claim. In her appeal, she contends that the district court erred in granting Tyson's motion for summary judgment on her sexual harassment and retaliation claims because genuine issues of material fact remain.

Having considered the parties' arguments, we affirm.

## I. BACKGROUND

Leeth began working at the Tyson plant in 1985. In 1999, Leeth was promoted to be a Hazardous Analysis Critical Control Points ("HACCP") technician, which required her to conduct tests such as checking for fecal matter and checking temperatures. The only other HACCP technician working on Leeth's shift was a caucasian woman named Ann Rutherford. As is stated in the written HACCP technician job description, Leeth and Rutherford were sometimes assigned to perform other tasks because of staffing shortages, and, as is the nature of chicken processing, some of those tasks were not pleasant.

2

In her complaint, Leeth claimed that the superintendent for her shift, Lester Bailey, sexually harassed her from the time that she started working at the plant in 1985 until she filed her EEOC complaint in 2005. Leeth makes the following allegations about Bailey: When Leeth entered Bailey's office, he tried to pull her onto his lap. Bailey made comments to Leeth that he wanted to "ram his tongue down her throat" and if "I could just get your tongue, I would suck it out of your mouth." Bailey approached Leeth at work and told her he was going visit her at home. Bailey dropped by Leeth's house uninvited, and Leeth did not answer the door, later telling Bailey that she had been showering and did not hear him. Bailey responded that she could have let him in so that he could watch her shower. Bailey called Leeth on the phone on numerous occasions, and while many of these conversations were simply friendly in nature, he would sometimes ask Leeth to go out with him or meet him at a hotel. On one occasion, Bailey told Leeth that if she were not married "[she] would have been his; he would have done got with [her]." Leeth informed Bailey that she was not interested in his advances.

When Leeth handed something to Bailey at work he would always try to feel her hand. Bailey asked Leeth, over the telephone and in person, "Do you know what I can do to you?" Leeth understood these comments to be sexual in nature. Bailey followed Leeth around the plant and she would try to get away from him. Employees

3

noticed Bailey being overly nice to Leeth for a period of time, and apparently one employee anonymously called and complained to the Tyson's hotline about the matter. It was common knowledge around the plant that Bailey was interested in Leeth.

Bailey is referred to as "Big Daddy Love" throughout the plant. Bailey told supervisors his "street name" was "Big Daddy Love." Bailey has a tag on his vehicle that he drives to work that says "Big Daddy Love."

Leeth's direct supervisor, Ann Ratliff, asked Leeth whether Bailey was bothering her. Leeth responded that Bailey was "kind of hitting a nerve," but Leeth did not otherwise press the matter or give any details about Bailey's conduct. Ratliff also testified in her deposition that on another occasion Leeth told her that Bailey had called her and asked her out. Ratliff indicated that Tyson's internal policies likely required her to follow up on Leeth's statement, but she did nothing because Leeth had specifically asked her not to. Leeth later told Ratliff that Bailey had stopped calling her.

Leeth was sometimes required to work "on the line," meaning that she would not do her HACCP technician job but was required to perform tasks that were less pleasant. Leeth contends that when Bailey required her to work on the line, Bailey was retaliating against her for not giving in to his advances.

4

On several occasions, Leeth complained of pain in her arms and hands. When she made such complaints, her superiors would send her to the staff occupational therapy nurse or to a doctor. On one occasion, the doctor reported that there was nothing wrong with her, and he approved her for full duties. Another time the doctor restricted her to jobs that would not require her to lift her arms above her shoulders. Leeth claims that Bailey once assigned her to a task that he knew she could not perform because of the pain in her hands. After she refused to do that task, her supervisors reprimanded her and suspended her without pay for three days. When she returned from her suspension still unable to perform the more-difficult line work, she was placed on leave until she was cleared by a physician to do the work.

Leeth also complained to her supervisor, Ratliff, about race discrimination. Leeth's complaints were rather vague and generally related to the fact that she felt that she was made to perform certain tasks because of her race and that someone (who, Leeth later admitted, never existed) told Leeth something to the effect that management wanted to remove her from her job because of her race. Ratliff investigated the matter, and Leeth later wrote a statement in which she acknowledged that her concerns had been addressed and that she was satisfied about the outcome. However, according to Leeth, the superior later retaliated against her by assigning her to unpleasant tasks and by participating in her reprimand and suspension.

5

The district court concluded that the alleged sexual harassment was not actionable because there was no evidence that the conduct so altered Leeth's work environment that it unreasonably interfered with her job performance. The court further concluded that, even if the conduct were actionable, Tyson was entitled to summary judgment on the claim based on the Faragher/Ellerth[1] defense – Leeth did not suffer any tangible adverse employment action, Tyson had an anti-harassment policy in place, and Leeth failed to take advantage of that policy. The district court also concluded that Leeth had failed to establish a claim of retaliation because she never engaged in any protected activities.

## II. DISCUSSION

"This court reviews a district court's entry of summary judgment de novo, applying the same legal standards used by the district court." Galvez v. Bruce, 552 F.3d 1238, 1241 (11th Cir. 2008). Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Swisher Int'l., Inc. v. Schafer, 550 F.3d 1046, 1050 (11th Cir. 2008). "In making this determination, we . . . draw[ ] all reasonable

---

[1] See Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

inferences in the light most favorable to the nonmoving party." Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999).

*A. Hostile Work Environment*

To establish a hostile work environment claim under Title VII, an employee must show:

> (1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc).

In Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998), the Supreme Court clarified the circumstances under which an employer can be held vicariously liable for a hostile work environment created by a supervisor. Madray v. Publix Supermarkets, 208 F.3d 1290, 1296 (11th Cir. 2000). If the plaintiff has not suffered an adverse, tangible employment action as a result of the harassment, the employer may establish the Faragher/Ellerth affirmative defense by demonstrating "(a) that the employer exercised reasonable care to prevent and

7

correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 1296-97 (internal quotation omitted).

We agree with the district court that Leeth failed to present evidence sufficient to establish that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment. Certainly, Leeth was annoyed by Bailey's actions, but there is no evidence of threats, *quid pro quo* offers and overt sexual actions other than a few insinuating comments. See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 808-09 (11th Cir. 2010) ("In evaluating allegedly discriminatory conduct, we consider its frequency . . .; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (quotation omitted); Mendoza v. Borden, Inc., 195 F.3d 1238, 1252 (11th Cir. 1999) (discussing prior cases where we held that even "boorish and offensive" behavior did not amount to actionable sexual harassment).

We further agree with the district court's conclusion that Leeth has not convincingly overcome Tyson's Faragher/Ellerth defense. The two times Leeth

8

discussed the matter with a superior, her complaints were very vague, and she stated that she did not want to pursue the matter. When she was directly asked by female supervisor whether Bailey was bothering her, Leeth declined to say anything beyond the fact that Bailey was "hitting a nerve." The one time that Leeth could possibly be seen to complain about Bailey is her statement to Ratliff that Bailey had asked Leeth out, but Leeth did not want to press the matter further and asked Ratliff not to tell anyone. "We have held . . . that if the plaintiff did not want the harassing behavior reported or acted upon, then the employer would not have been placed on proper notice of the harassment." Nurse BE v. Columbia Palms West Hosp. Ltd. Partnership, 490 F.3d 1302, 1310 (11th Cir. 2007) (quotations, alterations and citations omitted).

*B. Retaliation*

> Title VII's anti-retaliation provision makes it unlawful for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To make a prima facie showing of retaliation, the plaintiff must show: (1) that she engaged in statutorily protected conduct; (2) that she suffered adverse employment action; and (3) that there is "some causal relation" between the two events.

Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1268 (11th Cir. 2010) (citing McCann v. Tillman, 526 F.3d 1370, 1375 (11th Cir. 2008)).

9

When the evidence supporting a Title VII retaliation claim is circumstantial – as is the case here – we apply the McDonnell Douglas burden-shifting framework. Brown v. Ala. Dep't of Transp., 597 F.3d 1160, 1181 (11th Cir. 2010); see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Once the plaintiff establishes the *prima facie* case, the burden shifts to the employer to "proffer a legitimate, non-retaliatory reason for the adverse employment action." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). The burden then shifts to the plaintiff to show by a preponderance of the evidence that the proffered reason for the adverse action is "a pretext for prohibited, retaliatory conduct." Id.

Although we have concluded that Leeth was not sexually harassed and that Leeth never reported a claim of harassment to Tyson, we assume for the purpose of this discussion that Leeth engaged in protected activity by asserting a claim of race discrimination and by rebuffing Bailey's amorous advances. Leeth contends that her supervisors retaliated against her by (1) requiring her to work "on the line" and (2) suspending her without pay for three days on the occasion when she refused to perform certain tasks.

Tyson established legitimate nonretaliatory reasons for its decision to temporarily remove Leeth from her HACCP job and place her on the line because of

10

staffing shortages as is provided for in the HCAAP technician written job description. Moreover, the job that Leeth was assigned to, "draw/trim," was one in which she was experienced and the other HACCP technician was not. Leeth refused to perform the work, and the resulting suspension was a legitimate nonretalitory response. Although Leeth may have had legitimate medical reasons for refusing to do the work, suffering from tendinitis is not a protected activity under Title VII.

Leeth's attempts to demonstrate pretext are little more than conclusory statements to the effect that the actions were retaliatory because they were obviously done in retaliation. She has provided no specific evidence that would "allow a factfinder to disbelieve [Tyson's] proffered explanation for its actions." Combs v. Plantation Patterns, 106 F.3d 1519, 1532 (11th Cir. 1997). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

For the foregoing reasons, the district court's judgment is affirmed.

**AFFIRMED**.

11