[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-10449
Non-Argument Calendar
_____

D.C. Docket No. 4:15-cv-00118-RH-CAS

TINA RAY,

Plaintiff-Appellant,

versus

CITY OF TALLAHASSEE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 8, 2016)

Before TJOFLAT, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Tina Ray, a former employee of the City of Tallahassee (the "City"), appeals the District Court's grant of summary judgment on her claim that the City fired her for complaining about racial discrimination on the job site,[1] in violation of Title VII, 42 U.S.C. § 2000e-2(a), the Public Florida Whistleblower Act ("PWA"), Fla. Stat. § 112.3187(4)(a), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.10(l)(a).[2] Ray argues that the Court erred because she showed that the reasons given by the City for firing her—relating to her poor job performance—were pretextual. Ray identifies four points that show pretext: (1) the City's failure to follow its disciplinary policies; (2) her supervisor's close documentation of her performance; (3) her supervisor's announcement that she would only be in the Land Use section for 30 days; and (4) the lapse of fewer than 60 days between her protected activity and ultimate termination. After considering the parties' briefs and the record, we affirm the District Court's judgment.

---

[1] The Court granted the City summary judgment on the record during a reported pretrial conference held on January 7, 2016. Doc. 43.

[2] In addition to a claim of retaliatory discharge (for complaining about racial discrimination), Ray's complaint alleged age and race discrimination, and the District Court, giving Ray the benefit of a doubt, construed it also to allege racial harassment. The Court granted the City summary judgment on all claims. Ray's brief on appeal only challenges the Court's denial of her claim of retaliatory discharge; it presents no argument challenging the Court's rejection of her other claims. We therefore consider her to have abandoned all claims except the retaliatory discharge claim.

We review the summary judgment *de novo,* applying the same legal standard used by the District Court in deciding to grant it. *Johnson* v. *Bd. of Regents of Univ. of Ga.,* 263 F.3d 1234, 1242 (11th Cir. 2001). We draw all factual inferences in the light most favorable to the non-moving party, Ray. *Id.* Summary judgment is appropriate where "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

I.

Title VII makes it an unlawful employment practice for an employer to discriminate against any employee for opposing any practice made unlawful by Title VII, or for making a charge under Title VII. 42 U.S.C. § 2000e-3(a).  A similar protection against retaliation appears in the FRCA. Fla. Stat. § 760.10(7). The PWA, in turn, protects employees who, under certain circumstances, disclose "[a]ny violation or suspected violation of any... local law, rule, or regulation committed by an employee or agent of an agency" or "[a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance" from discipline or dismissal. Fla. Stat. §§ 112.3187(4), (5), (7). With respect to unlawful practices, both Title VII and the FCRA prohibit employers from discharging an employee, or otherwise discriminating against her with respect to her employment, on the basis of race. 42 U.S.C. § 2000e-2(a)(l); Fla. Stat. § 760.10(l)(a).

A plaintiff may establish a Title VII claim through either direct or circumstantial evidence. *Hinson* v. *Clinch Cty, Ga. Bd. Of Educ,* 231 F.3d 821, 827 (11th Cir. 2000). In reviewing Title VII claims that are supported by circumstantial evidence, we use the three-step burden-shifting framework established in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792,93 S. Ct. 1817,

3

36 L. Ed. 2d 668 (1973). Claims under the PWA and FCRA are governed by the burden-shifting standard for Title VII retaliation claims. *See, e.g. Sierminski* v. *Transouth Fin. Corp.,* 216 F.3d 945, 950 (11th Cir. 2000) (PWA); *Harper* v. *Blockbuster Entm't Corp.,* 139 F.3d 1385,1387 (11th Cir. 1998) (FCRA).  Under *McDonnell Douglas,* if a plaintiff establishes a *prima facie* case of retaliation, and the defendant provides a legitimate nondiscriminatory reason for the materially adverse action, then the plaintiff must finally prove that the defendant's reasons were pretexts for discrimination. *Bryant* v. *Jones,* 575 F.3d 1281,1307-08 (11th Cir. 2009).

> 'To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) [she] engaged in statutorily protected expression; (2) [she] suffered an adverse employment action; and (3) there is some causal relation between the two events.' *Olmsted v. Taco Bell Corp.,* 141 F.3d 1457, 1460(1 lth Cir.1998) (citing *Meeks v. Computer Associates Int'l,* 15 F.3d 1013,1021 (11th Cir.1994)).

*Pennington* v. *City of Huntsville,* 261 F.3d 1262, 1266 (1 lth Cir. 2001).

To prove pretext, the plaintiff must show that the employer's proffered reasons were "a coverup for a... discriminatory decision." *Rojas v. Florida,* 285 F.3d 1339, 1342 (1 lth Cir. 2002). If the defendant's legitimate nondiscriminatory reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. *Wilson* v. *B/E Aerospace, Inc.,*

4

*376* F.3d 1079,1088 (11th Cir. 2004). Ultimately, a reason is not "pretext/or *discrimination* unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr.* v. *Hicks,* 509 U.S. 502, 515,113 S. Ct. 2742,125 L. Ed. 2d 407 (1993) (emphasis in original) (quotation omitted).

The inquiry into pretext centers on the employer's beliefs, not the employee's beliefs or "reality as it exists outside of the decision maker's head." *Alvarez* v. *Royal Atlantic Developers,* 610 F.3d 1253,1266 (11th Cir. 2010). If the reason is one that might motivate a reasonable employer, the plaintiff cannot succeed by simply quarrelling with the wisdom of the reason. *Chapman* v. *AI Transp,* 229 F.3d 1012,1030 (11th Cir. 2000) *(en banc).* The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff. *Pennington* v. *City of Huntsville,* 261 F.3d 1262,1266 (11th Cir. 2001). Conclusory allegations of discrimination are, without more, insufficient to carry the plaintiffs burden. *Mayfield v. Patterson Pump Co.,* 101 F.3d 1371,1376 (11th Cir. 1996). With these principles in hand, we consider first whether Ray established a *prima facie* case of retaliation.

II.

Tina Ray is a white female. She was 58 years of age when she went to work for the City in its Growth Management Department on January 13, 2014, as a probationary employee for six months. Karen Jumonville was the Department's Director. Ray was assigned to the Department's Building Inspections Division ("BI") as a Permit Technician. Doug Moore, who managed the BI, was her ultimate supervisor. Ray's immediate supervisor was Jasmine Gates, the BI's Permitting Services Supervisor.

The BI was responsible for preparing, processing and issuing various types of building permits. Like the other Permit Technicians working under Gates, Ray was cross-trained to handle different types of permits. It was fast-paced work involving different mediums, e.g., telephone, email, fax and mail, and a variety of customers, e.g., contractors, builders, and the City's inspectors.

It was not long before Ray got behind in her work. She was slower than the other technicians and had difficulty processing building permits. Gates and Jumonville received complaints from at least one customer. They also received complaints from staff. In short, Ray was not performing adequately. On April 16, 2014, Gates and Moore told her that her employment was to be terminated. They gave her the option of resignation instead of termination.

6

Two days later, on April 18, Ray emailed Gates and Moore saying that she would not resign; she wanted to continue working for the City. They responded on April 20, with a letter notifying her that her probationary period would end effective April 30. The same day, April 20, Ray formally grieved the notification, complaining that she had been bullied and harassed in front of co-workers by a black co-worker, a technician named Carol Horsey. She claimed that Horsey's conduct amounted to racial discrimination.

On April 20, having been informed of Ray's grievance, Moore met with Ray to learn the specific details of the racial discrimination. On April 21, at Moore's request, Ray described Horsey's behavior and informed him of conversations she had with a co-worker about Horsey two weeks earlier and with another co-worker that day. And she apologized for not complaining about Horsey's conduct sooner.

Pursuant to City policy, Jumonville heard Ray's grievance. She reversed Moore's and Gate's decision to terminate Ray's employment and arranged to transfer Ray to the Department's Land Use and Environmental Services Division ("LUES"), with an extended period of probation, to "see if she would be better suited to a position in a more relaxed atmosphere." On April 22, Jumonville and Moore introduced Ray to Steve Palmer, the LUES Administrator, and Edie Harrison, who would be her immediate supervisor. Ray agreed to the transfer and the extended probation.[3]

_____

[3] During the meeting with Jumonville, Moore, Palmer and Harrison, nothing was said about

Ray reported for work in the LUES on April 23.  Ray had the same kind of problems she manifested in the BI—particularly in forwarding phone calls and handling permit information. On June 2, Palmer and Harrison met with Ray regarding her probationary period and provided her with a document outlining her deficiencies. Palmer informed her that she was being terminated.

Ray's claim of retaliation fails for two reasons. First, she failed to make out a *prima facie* case of retaliation or to present evidence that the City's reason for terminating her employment was pretextual. As for her *prima facie* case, Ray established the first two elements: she engaged in protected expression, complaining about Horsey's discriminatory behavior in the work place, and she suffered adverse employment action. But she failed to establish the third element, a causal connection between her complaint about Horsey and the adverse employment action Palmer took. Neither Palmer, the LUES Administrator and ultimate decision maker, nor Harrison, her immediate supervisor who recommended her termination, knew anything at all about the complaint Ray had made about the racial discrimination in the BI, brought about by Horsey's conduct. Even if we were to assume that Palmer and/or Harrison knew about the complaint,

---

Ray's grievance or the complaint Ray had made about Horsey's purportedly discriminatory behavior toward her. Ray admitted that LEUS was a different section of the Growth Management Department with different co-workers.

8

the reason for terminating Ray's employment was legitimate and non-discriminatory, and Ray offered nothing to show that it was pretextual.

For the foregoing reasons, the judgment of the District Court is

AFFIRMED.