[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10218
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00565-RH-CAS

CLINTON O. SMITH,

Plaintiff-Appellant,

versus

CITY OF TALLAHASSEE,
ROBERT E. MCGARRAH,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(October 16, 2019)

Before ED CARNES, Chief Judge, ROSENBAUM, and BRANCH, Circuit
Judges.

PER CURIAM:

Clinton Smith filed a complaint in Florida state court against the City of Tallahassee and Robert McGarrah, alleging retaliation in violation of the First Amendment and the Florida Whistleblower Act (FWA).  The City and McGarrah removed the action to the Northern District of Florida and filed a motion for summary judgment, which the district court granted as to each claim.  The district court also denied Smith's motion to remand the FWA claim to the state court.  This is Smith's appeal.

## I.

The facts are as follows.[1]  The City's Electric Utility Department provides electrical services to residents in and near Tallahassee.  The Electric Utility Department originally had two divisions: the Power Engineering division and the Transmission and Distribution division (T&D).  Power Engineering had 25 to 30 employees, and T&D had around 120 employees.  McGarrah was the general manager of both divisions.

In 2015 the City hired Smith as the assistant general manager of the Power Engineering division.  Smith was selected for that position over another applicant, Richard Ash, because Smith appeared to have a more flexible management style.

---

[1] While the "facts" as accepted for purposes of summary judgment may not be the actual facts of the case, we conduct our analysis based on the evidence viewed in the light most favorable to Smith.  We must accept that view of the facts at this stage of the proceedings. Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013).

2

From 2016 to 2017 Smith complained to McGarrah at least nine times about issues within the Electric Utility Department. Several of his complaints centered on what he viewed as improper favoritism and nepotism. He complained several times about his coworkers. He accused Ash of having diverted electrical crews from a hospital during the recovery effort following a hurricane. He also reported to the Parks and Recreation department that — contrary to the Electric Utility Department's official stance — a transmission line above a city park was causing park users to be shocked by the playground equipment. When McGarrah learned that Smith had contradicted the Electric Utility Department's official stance, he told Smith that he wished he had not expressed his personal opinion about what caused the shocks.

As of 2017 the City's general budget had been operating on a deficit for several years. Due to that deficit, certain departments tried to "identify any organizational changes or operational efficiencies" that could be implemented to cut expenses and improve "service delivery" to customers. City Manager Rick Fernandez asked the Deputy City Manager, Reese Goad, to "find efficiency" within the City departments. Fernandez instructed the heads of other departments to make their "best professional recommendations" on how to make the City's services more efficient. As part of the effort to increase efficiency, the City

3

combined three departments (but not the Electric Utility Department) into others, which led to the termination of three department heads.

In May 2017 McGarrah met with Goad to recommend that the City merge the Power Engineering and T&D divisions. Unlike the general City budget, the Electric Utility Department had been operating on a surplus for the last two years and was projected to have another surplus in 2018. Despite that surplus, McGarrah testified that he believed the merger was necessary to promote efficiency because of historical tensions between the divisions. He testified that the tension between the divisions was apparent during the hurricane recovery. Goad agreed with McGarrah's recommendation to merge the Power Engineering and T&D divisions. In July 2017 the City merged the divisions and kept Ash on as assistant general manager of the newly combined division. The City eliminated Smith's position and terminated his employment.

McGarrah testified that he recommended that the City hire Ash for the assistant general manager position instead of Smith because of Ash's experience and tenure with the City. Ash had worked for the City since September 2012. He was promoted to assistant general manager of T&D in 2016, where he supervised around 120 people, as compared to the 20 or 30 people Smith supervised. Before his employment with the City, Ash held a similar position with a public utility for 27 years. At that job, Ash supervised the line crews and engineering personnel.

4

Smith had worked for another public utility as well, but only for seven years. McGarrah believed that Ash had a better working relationship with his peers than Smith. So McGarrah decided that Ash was better suited for the new job and that Smith would have to be discharged.

Before the merger Smith talked to McGarrah and other department leaders about the reorganization effort. Smith testified that he did not recall McGarrah ever discussing any "legitimate" organizational or budget reasons for merging the divisions. It was Smith's view that the merger was a way to get rid of "people that had pissed [McGarrah] off." Smith believed that he in particular had angered McGarrah when he voiced his opinion about the transmission line over the city park. Before Smith expressed his concerns about the transmission line, he and McGarrah had gone to lunch two to three times a week. After he did so, they had lunch together less often. Two employees approached Smith and asked him what he had done to "piss off" McGarrah.

As a result of the reorganization, some Electric Utility Department employees received raises. The City promoted one employee, Jess Gerrell, to a supervisor position within the new division. His promotion made him responsible for the "Line Crews, Service Team and Vegetation Management." The City's layoff policy prevented terminated employees from displacing a permanent employee. But if a terminated employee applied to a vacant position for which he

5

or she was qualified, the department with the vacancy was required to interview the employee.  Smith did not apply for the position that was filled by Gerrell.

## II.

Smith challenges the district court's grant of summary judgment to the defendants, which we review de novo.  Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005).  Summary judgment is appropriate when the record demonstrates that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

Government employers may not discharge public employees in retaliation for speech protected by the First Amendment.  Alves v. Bd. of Regents, 804 F.3d 1149, 1159 (11th Cir. 2015).  To establish a prima facie case of First Amendment retaliation, the employee must show that (1) his speech relates to a matter of public concern, (2) his free speech interests outweigh the public employer's interest in efficiently fulfilling its responsibilities, and (3) the speech played a substantial or motivating role in the employer's decision to take the adverse action.  See Akins v. Fulton Cty., 420 F.3d 1293, 1303 (11th Cir. 2005).  Once the employee makes that showing, the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same employment decision absent the protected speech.  Cook v. Gwinnett Cty. Sch. Dist., 414 F.3d 1313, 1318 (11th Cir. 2005).  The employer must show that, regardless of the speech, it would have

terminated the employee "in light of its knowledge, perceptions, and policies at the time of the termination." Stanley v. City of Dalton, 219 F.3d 1280, 1293 (11th Cir. 2000) (quotation marks and alterations omitted). We use a case by case approach to determine if an employer has made that showing. Id. at 1294. We do so without second guessing the business decisions of the employer. Rowell v. Bellsouth Corp., 433 F.3d 794, 798 (11th Cir. 2005).

The FWA prohibits retaliation against whistleblowers in public employment. See Fla. Stat. § 112.3187(2). We analyze FWA claims under the burden-shifting framework applicable in cases brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. See Sierminksi v. Transouth Fin. Corp., 216 F.3d 945, 950 (11th Cir. 2000) (applying the burden-shifting framework to a claim brought under Florida's private whistleblower act, Fla. Stat. § 448.102); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801–05 (1973) (establishing a burden-shifting test for claims brought under Title VII); Griffin v. Deloach, 259 So. 3d 929, 931 (Fla. 5th DCA 2018) (applying the Title VII burden-shifting framework to the plaintiff's FWA claim). The employee first must make a prima facie case of retaliation by showing that (1) he engaged in statutorily protected activity, (2) he suffered an adverse personnel action, and (3) there is a causal connection between the protected activity and the adverse personnel action. Olmstead v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). After the

employee makes that showing, the burden shifts to the employer to show that there was a legitimate, nonretaliatory reason for the adverse action. Id. The burden then shifts back to the employee to show that the employer's legitimate, nonretaliatory reason is merely pretext for prohibited retaliation. Id. In doing so, the employee must rebut the employer's reason "head on." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). The employee cannot succeed simply by disputing the wisdom of that reason. Id. "To show pretext, [the employee] must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010) (quotation marks omitted).

Even if we assume that Smith has made out a prima facie case of retaliation under the First Amendment and FWA, he still must show pretext. See id. (assuming that the plaintiff established a prima facie case of discrimination under Title VII but affirming the grant of summary judgment to the defendant because the plaintiff failed to show pretext). In order to overcome summary judgment, Smith needed to create a genuine issue of material fact as to whether he would have been fired regardless of his speech and whether the reasons for his discharge were pretext for unlawful retaliation. See id. ("It matters not whether [the plaintiff]

8

has made out a prima facie case if [he] cannot create a genuine issue of material fact as to whether [the defendant's] proffered reasons for firing [him] are pretext masking discrimination."). He has not done so.

As to Smith's First Amendment claim, the evidence shows that he would have lost his job because of the reorganization effort, regardless of any protected speech. Cook, 414 F.3d at 1318. For several years before Smith's discharge, the City sought to "identify any organizational changes or operational efficiencies" that could improve its customer service. To achieve efficiency, it consolidated three departments and terminated the heads of those departments. When the City consolidated the Electric Utility Department in 2017, it did so with the dual goals of making its services more efficient and eliminating tensions between the Power Engineering and T&D divisions that impacted productivity. We do not second guess the wisdom of those goals. Rowell, 433 F.3d at 798. Smith has not shown a genuine issue of material fact that his complaints led to his termination and that the consolidation based on the restructuring of the Electric Utility Department was just a pretext for retaliating against him. Stanley, 219 F.3d at 1293; Cook, 414 F.3d at 1318. The defendants were entitled to summary judgment on Smith's First Amendment claim.

Turning to the FWA claim, Smith has failed to rebut "head on" the defendants' legitimate, nonretaliatory reasons for terminating him. See Chapman,

9

229 F.3d at 1030.  He argues that the defendants' proffered reasons are pretextual because the Electric Utility Department had a budget surplus and did not need to consolidate the divisions.  But while the Electric Utility Department had a budget surplus, the City had been operating on a deficit for several years.  Recognizing that, Fernandez asked the department heads to find ways to operate more efficiently.  One of the ways they believed they could increase efficiency was to consolidate departments, which could lead to cost savings.  So consolidating the Electric Utility Department was a way to improve the general City budget situation.  And even aside from the City's budget concerns, McGarrah testified that saving money was not the sole reason for combining the divisions.  He believed that combining Power Engineering and T&D would resolve historical tensions between the divisions and allow the Electric Utility Department to work more efficiently.  The fact that the Electric Utility Department had a surplus does not rebut these legitimate reasons for consolidating the divisions, which led to the termination of Smith's position.  Id.

Smith also contends that the defendants' reasons for hiring Ash instead of him to head the consolidated division are pretextual because Ash was less qualified for the job.  He argues that the fact that McGarrah was "pissed" at him after he expressed his opinion about the transmission line issue shows that the defendants fired him in retaliation for his speech.  See Sierminski, 216 F.3d at 950.  Those

arguments lack merit.  The evidence does not show that Smith was more qualified than Ash for the position.  Although Smith had been an assistant general manager for longer than Ash, Ash had worked for the City longer.  As assistant general manager for T&D, Ash supervised around 120 employees, while Smith supervised only 25 to 30 employees in the Power Engineering division.  Before working for the City, Ash had been a supervisor with a public utility for 27 years.  Smith had worked at a public utility for only seven years before working for the City.

McGarrah believed that Ash's role as the assistant general manager of T&D made him well suited to supervise the larger, consolidated division.  McGarrah also believed that Ash had a better working relationship with his peers.  That Smith instead of Ash had been chosen to serve as the assistant general manager of the Power Engineering division, does not mean that Smith was more qualified to supervise the newly consolidated division.  And the fact that McGarrah allegedly was "pissed" at Smith because he expressed his personal opinion about the transmission line issue does not rebut the defendants' reasons for choosing Ash to lead the new division.  Chapman, 229 F.3d at 1030.  There is no genuine issue of material fact about whether the defendants made a business decision that Ash was better for the new job, and we do not act as a "super-personnel department" and second guess that decision.  See id. (quoting Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991)).

11

Finally, Smith contends that he should have been offered the supervisor position that was given to Gerrell. If he had applied for and had been qualified for it, he would have been guaranteed an interview under the City's layoff policy. But Smith failed to show that he was qualified for the position, which involved supervising line crews, the service team, and vegetation management. More importantly, he never applied for the job. We cannot say that the City's failure to offer Smith a new supervisor position that he did not apply for showed that its legitimate reason for discharging him from the other position was "unworthy of credence." Alvarez, 610 F.3d at 1265. Smith has failed to show that the defendants' reasons were pretext for unlawful retaliation. We affirm the district court's grant of summary judgment to the defendants on Smith's First Amendment and FWA claims.

### III.

Smith also challenges the district court's denial of his motion to remand his FWA claim to the state court. We review the district court's denial of Smith's motion to remand de novo and its decision to exercise supplemental jurisdiction over the state law claim for abuse of discretion. Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 738 (11th Cir. 2006); Henderson v. Wash. Nat. Ins. Co., 454 F.3d 1278, 1281 (11th Cir. 2006).

12

A party may remove a state court action to federal court when the relevant federal court has diversity or federal question jurisdiction. See 28 U.S.C. § 1441(a). A federal court has supplemental jurisdiction over state law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But a district court may decline to exercise its supplemental jurisdiction when (1) the state law claim raises a novel or complex issue of state law, (2) the claim substantially predominates over any claims that the district court has original jurisdiction over, (3) the court has dismissed all the other claims that it has original jurisdiction over, or (4) there are other compelling reasons for declining jurisdiction. Id. § 1367(c)(1)–(4). The court should consider "judicial economy, convenience, fairness, and comity" in exercising its supplemental jurisdiction. Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002).

The district court did not abuse its discretion by deciding the FWA claim on the merits and denying Smith's motion to remand the action to state court after disposing of the federal claim. Henderson, 454 F.3d at 1281; Parker, 468 F.3d at 738. The First Amendment and FWA claims involved the same facts, making the FWA claim "so related" to the First Amendment claim that it was "part of the same case or controversy." 28 U.S.C. § 1367(a).

13

Smith argues that the FWA claim should have been remanded to the state court because the FWA is "unique and contains discrete multiple parts." That argument lacks merit. Florida courts analyze FWA claims under the McDonnell Douglas burden-shifting framework. See Griffin, 259 So. 3d at 931. That standard, which was developed by the Supreme Court in the Title VII context, is routinely used by federal courts. See McDonnell Douglas Corp., 411 U.S. at 801–05. The district court did not have to dive deep into the state law to resolve the FWA claim. Because the FWA claim involved the same facts as the First Amendment claim and the familiar burden-shifting framework applied, judicial economy favored the court's consideration of the FWA claim in its summary judgment order. Rowe, 279 F.3d at 1288. The district court acted within its discretion in exercising supplemental jurisdiction.

**AFFIRMED.**